# City of Allegheny, Appellant, v. Pittsburgh, Allegheny & Manchester Passenger Railroad Company.

*Corporations—Dividend—Definition of dividend.*

A dividend is the share of a sum divided that falls to each individual; a distributive sum, share or percentage, applied to the profits as apportioned among stockholders. It differs from profits in being taken by a competent authority out of the joint property of the partnership or company and transferred to the separate property of the individual partners or stockholders.

*Street railways—Corporations—Dividend—Discretion of directors.*

Where a street railway company is authorized by its charter to declare dividends "of so much of the profits of said company as shall appear advisable to the directors thereof," but in no case to exceed the amount of the net profits of the company, it is discretionary with the directors to declare such dividends as "shall appear advisable" to them, not exceeding net profits.

Where a street railway company is required by its charter to pay to a city a tax upon "dividends declared," and discretionary power is given by the charter to the directors to declare dividends, the tax can only be levied upon the dividends declared by the directors, and not upon the par or market value of the stock, or on profits earned.

A street railway company was required by its charter to pay a tax to a city upon "dividends declared." A traction company leased the property and franchises of the street railway company. At the time of the lease the market value of the shares of the railway company was eight times that of the shares of the traction company. The stockholders of the street railway company transferred their stock to the traction company and received eight shares of the traction company's stock for one share of the railway company's stock. The railway company's stock became an asset of the traction company, and was pledged as collateral security for its bonds. *Held*, that the whole transaction was a change of ownership of the same property, and neither in form nor in substance the declaration of a dividend.

*Corporations—Exchange of stock—Dividend.*

A traction company leased a street railway company and exchanged its shares of stock for the street railway company's shares, in proportion of eight to one, which was their relative market values. The street railway company also transferred to the traction company the shares of a third railway company and some real estate, in alleged consideration of the issue of additional shares of its stock to the stockholders of the railway company. *Held*, that if there was such an agreement, it would seem to be a severance of these shares from the corporate property, and a distribution of the value of the shares of the third company among the stockholders, and was therefore a dividend.

Argued Nov. 2, 1896. Appeal, No. 119, Oct. T., 1896, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1893, No. 147, on verdict for plaintiff for less than the amount claimed. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit to recover a tax on alleged dividend. Before WHITE, J.

At the trial it appeared that the defendant was chartered by the special act of April 12, 1859, under which it was required to pay a tax upon declared dividends to the city of Allegheny. On July 25, 1889, the stockholders of the defendant company entered into an agreement to lease its property and franchises to the Pittsburgh, Allegheny & Manchester Traction Company, for a term of 999 years, at the same time a written request was made by the said stockholders to the said traction company to increase its capital stock from $5,000 to $3,000,000, they agreeing to subscribe for said stock and pay for the same with the stock of the defendant company at the rate of one share of defendant company's stock for eight shares of the traction company stock. This arrangement was consummated. The shares of stock in the two companies were of the same par value. The city claimed that the transaction was in effect a stock dividend and as such taxable.

, In the course of the trial it was developed that the defendant company had sold certain real estate and divided the proceeds among its stockholders. It was conceded that the defendant under the ordinances was liable to a five per cent tax on the same.

Other facts appear by the charge of the court which was in part as follows :

In this case the questions are mainly for the court. There are no disputed questions of fact for the jury to pass upon. The plaintiff's claim is, first, for a tax upon the property of the defendant company that was sold and the proceeds distributed among the stockholders. It was some $30,000, or in that neighborhood, and I instruct you that the plaintiff is entitled to recover on that part of the case. The counsel will agree upon the amount of your verdict in that respect.

The other question is a far more important one. The claim of the city is for over $100,000. The main facts of the case are these: The Pittsburgh, Allegheny & Manchester Passenger Railway Company, the defendant in this action, was organized in 1859, under a special act of the legislature. It was authorized to construct a passenger railway from Pittsburgh, through Allegheny, and to, what was then, the borough of Manchester. That act of assembly required the company to pay to the city of Allegheny five per cent on all dividends of profits. That was paid by the company until the arrangement was made with the traction company, sometime in 1889 or 1890. The old company was organized and chartered as a horse-car company, the motive power being horse-power. Under their charter, as decided in other cases by the Supreme Court, it had no authority to change to electric or cable power. The stock of the old company was seven thousand shares, of the par value of $50.00 a share, making the capital stock $350,000. Sometime, I presume after the organization of that company, a company, called The Pittsburgh Union Passenger Railway Company was organized. The defendant company purchased a controlling interest in that company, which was also a passenger railway in the city of Allegheny. That company had a capital stock of $100,000, two thousand shares at the par value of $50.00 a share. The Pittsburgh, Allegheny & Manchester Passenger Railway Company purchased one thousand four hundred and ninety-nine shares of the union company's stock, which gave them the controlling interest in it. In 1889, a movement was put on foot to change to an electric railway. The old company, having a capital only of $350,000, and limited to horse power, and also having a mortgage then on their property, were financially unable, under their charter, to raise the money necessary in changing it to an electric railway. An act of assembly was passed in 1887, authorizing the incorporation of companies to use electricity or cable power for more rapid transit over street railways. Several of the stockholders of the old passenger railway company applied for a charter of incorporation, under the act of 1887, and obtained it. The capital stock of that company was only $5,000 originally. Under the act of assembly that company was authorized to lease any passenger railway, and to apply electricity as a motive power. It was then arranged by the stockholders of the

passenger railway company, with the sanction of the corporation, that the stockholders should transfer their stock to the electric company, and that the capital stock of that company should be increased to $3,000,000.   The company was organized, and the old stockholders took stock in the electric or traction company. They subscribed and got eight shares in the new company for one share they had in the old.   The old company made a lease for nine hundred and ninety-nine years, transferring all their property, rights and franchises to the electric company, all except some real estate that was held by the trustees, and afterwards sold and divided among the shareholders, to which I have already referred.

Now the claim of the plaintiff is, that by the stockholders of the old company getting eight shares of stock in the electric company for one in the old, it was in the nature of a stock dividend, for which they ought to pay the five per cent to Allegheny city.   The stock of the passenger railway company had increased very greatly in value.   The par value was $50.00 a share, but the evidence of Mr. Hill is that shortly before this arrangement was made the stock of that company was selling in the market at $320 a share—that would show that the stock had enhanced in value nearly seven times; and the evidence is that the stock in the new company shortly after it was organized sold at $40.00 a share; so that eight shares of stock in the new, or electric company, were exactly equal to one share in the old company at that time.   Eight shares at $40.00 a share would be $320, and that was what one share of the old company's stock was selling for at that time.   No doubt the road was worth a great deal more than the $350,000 (the capital stock) at the time of this arrangement.   No doubt it was because of its increased business which enabled it to pay handsome dividends. By the arrangement the traction company was bound to pay an annual rent to the old passenger railway company, of $75,000 a year, that would be at the rate of very nearly twenty-two per cent on $350,000.

Now the argument on the part of the counsel representing the city is, that the value of the corporate property had very greatly increased, and, as it was all transferred to the traction company, the increased value should be regarded in the character of a stock dividend, and be liable to pay a tax of five per

cent to the city of Allegheny. If I understand the argument it is this : that as the property of that old passenger railway company was worth seven times as much as its capital stock, the excess was in the nature of a dividend to the stockholders, and the increased value would be liable to the tax of five per cent. The traction company would be liable to pay the tax to Allegheny city on its dividends, whether it directly assumed to do so or not. Taking the franchises, property and rights of the old passenger railway company, it would take them subject to the burdens upon them, and, as they were bound to pay five per cent tax upon the dividends, the new company would be bound to pay it also. But they expressly assumed it. The ordinance of the city, substantially sanctioning this transfer, or at least, recognizing the rights of the electric company, also imposed this condition. The electric company has been paying the tax to the city ever since it was organized in 1890 and, according to the evidence, the tax paid to the city, has been greater than prior to this new arrangement.

I think there is a difference between a tax on the capital stock of a company and a tax simply on the dividends of the profits of the company. Where the tax is on the capital the dividends often measure that capital. The dividends may show that the property is worth a great deal more than its capital stock. In this case the tax is to the city of Allegheny upon dividends of profits, or earnings of the railway company. Now, undoubtedly, the directors of the company might have suspended dividends for a year, or two or three years, if necessary, if it was advisable to pay debts. The paying of debts is a benefit to stockholders, because all expenses and interest on debts have to first be paid before there can be a dividend or profit. Wiping out the debts is an advantage to the stockholders. Although they might not get a dividend for two or three years, in the end they would get more in consequence of paying the indebtedness. . . .

[I therefore say, in conclusion, that your verdict should be for the amount agreed upon by the counsel for the dividends for the property sold after this lease was made, which was not embraced in the lease ; and I instruct you that the plaintiff is not entitled to recover on the other ground of action, claimed in this case.]

Verdict and judgment for plaintiff for $2,021.53. Plaintiff appealed.

*Error assigned* was above instruction, quoting it.

*D. F. Patterson*, with him *Elliot Rodgers, Jos. A. Langfitt* and *Geo. Elphinstone*, for appellant.—Whenever a corporation ceases to use any part of its property in the conduct of the business for which it was chartered, and disposes of such property by sale or lease for valuable consideration, and that consideration is divided among its stockholders in the proportion of the number of shares of stock held by each, such division of the price realized from the sale or demise of the property constitutes a dividend.

The consideration was divided among the stockholders of the appellee in the exact proportions of their holdings of the appellee's stock, and it was so divided by virtue of their unanimous action, which rendered a formal declaration of a dividend by the board of directors entirely unnecessary. Such formal declaration is not required to constitute a dividend subject to taxation: Lehigh Crane Iron Co. v. Com., 55 Pa. 448.

Under the authority of Matson's Ford Bridge Co. v. Com., 117 Pa. 265, and the principles governing the taxation of dividends laid down in Com. v. The Western Union Telegraph Company, 15 W. N. C. 331, and the cases there cited, we claim that the value of the traction company's stock distributed among the stockholders of the appellee, solely by virtue of their own act and authority, so far as such value in the aggregate exceeded the par value of appellee's stock, constituted profits of which a taxable dividend was made in the manner described.

*D. T. Watson*, with him *A. M. Neeper,* for appellee.—The words of the contract refer to money dividends and not to stock dividends: Com. v. E. & P. R. R., 74 Pa. 99.

The burden of proof is upon the city of Allegheny to make out its case, and prove that, in reality, a dividend was declared on which the passenger railway company should pay to the city its share of five per cent of the same.

The passenger railway company did not receive or divide the traction company stock.

This case does not fall within the rule established by Com. v. The Western Union Company, 15 W. N. C. 332, or Bridge Company v. Com., 117 Pa. 275. Each of these cases was on the construction of the taxing act of June 7, 1879, which imposes for the state a tax not merely on the dividends but on the capital stock of the corporation, and measures its value in a fixed and determined way by the dividends made or declared.

A new question, not raised in the statement of claim, or on the trial below, is that, at least, the old Manchester Passenger Railway Company should pay to Allegheny City five per cent on 7,000 shares of the capital stock of the traction company, because it was really the division among the stockholders of the old passenger railway company of 1,499 shares of stock in the Union Passenger Railway Company.

It seems clear that the city of Allegheny cannot recover on this, because : (1) It is not a money dividend within the meaning of the contract sued on. (2) Nothing was taken out of the treasury of the old Manchester Passenger Company and divided among its stockholders, but the trustee of the stockholders sold to the traction company for the stockholders, and the stockholders received the purchase money, i. e. traction stock, for their own property. (3) Even if the facts were that the Union Company stock was the property of the old Manchester Company, and its title was passed to the traction company, and the traction company, the lessee of the property and owner of all stock of the Manchester Passenger Company, itself issued of the traction company stock, shares to the individuals for this property, this was not a dividend by the passenger railway company.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

The Passenger Railway Company, appellee, was chartered by the special act of April 12, 1859, by the provisions of which it was to declare dividends " of so much of the profits of said company as shall appear advisable to the directors thereof," but in no case to exceed the amount of the net profits of the company. By the twelfth section of the act the company was required, inter alia, to pay to the city of Allegheny a certain per centage " of the dividends declared." The city of Allegheny by ordinance gave its consent to the occupation of its

streets upon the same condition of the payment of the tax upon "dividends declared." The question in the present case is whether the transaction by which the railway company was leased to the traction company, and the stockholders exchanged their holdings of stock in the former for stock in the latter, assuming all these matters to have been parts of the same transaction, was equivalent to the declaration of a dividend by the railway company on which a tax would be due under the charter and ordinance.

It is not necessary at present to discuss the argument of the appellee that only cash dividends are taxable under the charter. If that was the legislative intent the question would still arise whether any distribution of profits equivalent to cash could be made among the stockholders in any form, or by any name, so as to escape taxation. It is sufficient to say that there is no evidence here to warrant a jury in finding any device for such purpose.

The tax is not on par value, or market, or actual value of stock, nor on profits earned, but on dividends declared. A dividend, as defined by Webster's dictionary (1893) is "the share of a sum divided that falls to each individual, a distributive sum, share or percentage, applied to the profits as apportioned among stockholders." It differs from profits in being taken by competent authority out of the joint property of the partnership or company, and transferred to the separate property of the individual partners or stockholders. No safely conducted business, corporate or other, distributes all its earned profits. There must be a fund reserved for contingencies, for repair or renewal of deteriorated material, etc., and the amount, absolute or proportionate, to be held for such purpose must be determined by the authority which conducts the business. The power to control this matter is necessarily implied in all authority to make dividends, and in the present case it is expressly vested in the directors who are to declare such dividends as "shall appear advisable" to them, not exceeding net profits. The words "dividends declared" therefore, have a substantial and settled meaning, and it is upon such dividends only, and not as already said on par or market value of stock or on profits earned, that the tax is laid.

Continuing to regard all that was done by both corporations

and the stockholders as parts of a single transaction, as that is the aspect most favorable to the appellant, what was it in substance?

First, as to the stockholders individually, it was an exchange of their holdings in the railway stock, for holdings in the traction stock, at the rate of one to eight.

The shares held by each stockholder were his individual and separate property. He could have sold the railway shares at 320, which was the market price, and bought traction shares at 40, also the market price, and would then have stood just where he stands now, with a change of his property from one form to the other in the ratio of one to eight, yet it would have been his own private act with which neither the company nor the other stockholders could have interfered, or for which they would have been responsible. The nature of the act was not changed by the fact that all the stockholders did it, whether separately or in pursuance of an agreement in which all joined. In either case it was still the individual act of each in his own right.

Secondly, as to the companies. The traction company acquired the stock of the railway company, which under its charter it had power to do. It might under such power have gone into the market and bought railway stock at 320, and sold enough of its own stock at 40 to pay for the other. Instead of the acquisition being made thus by separate purchase and sale of the two stocks, it was done by direct exchange between the owners. The nature of the transaction was not changed thereby. It was a transfer of property from one owner to another, and the personality of the purchaser or the seller did not change its substantial character. Then as to the railway company, its stock has changed holders, and that is all. The shares are all in existence just as they were before, but instead of being owned by numerous individuals they are held in one hand, in fact they are a valuable corporate asset of the traction company, and are pledged as collateral security for its bonds. As regards the railway company with reference to which the tax is to be considered, there was no distribution or change of what had been the joint corporate property, into the separate property of the individual stockholders. The whole transaction was a change

of ownership of the same property, and neither in form nor in substance the declaration of a dividend.

The cases chiefly relied upon by the appellant, Matson's Ford Bridge Co. v. Com., 117 Pa. 265, and Com. v. Telegraph Co., 15 W. N. C. 331, are not applicable. In both of them the tax was upon the value of the capital stock, and not on the dividends, which were mere measures of such value, and in both of them there had been in fact a severance of earnings or profits from the mass of the corporate property, and a distribution of them among the stockholders as individuals, which is the essential character of a dividend.

A distinction was raised in the argument here between the transaction as regards the exchange of stock by the holders in the railway company and the transfer to the traction company of the one thousand four hundred and ninety-nine shares of the Union Passenger company. The latter were held by trustees, but under what title or upon what terms does not precisely appear. The distinction was not made in the plaintiff's statement, nor at the trial, and there is no assignment of error raising it specifically in this court; the plaintiff's claim being made upon the entire transaction as single and involving a tax upon the whole. It appears inferentially in the argument and in some of the evidence that these shares of the Union company were part of the general assets of the appellee, and that in the arrangement they were transferred to the traction company in consideration of the issue of additional shares of its stock to the holders of the shares of appellee. If such was the fact it would seem to be a severance of these shares from the corporate property of the appellee and a distribution of their value or equivalent among the stockholders individually, and therefore a dividend, taxable unless the legislative intent was to restrict the tax to cash dividends only, an intent that could hardly be presumed, and the burden of proof of which would be upon appellee. But if this were the real state of the facts there would be no difference except the question of cash dividend between the distribution of the proceeds of this Union stock and the proceeds of the sale of the real estate, etc., as to which the learned judge below directed the jury to assess the tax. It would not be safe for us to assume that his including one and excluding the other was the result altogether of not having his attention called to the latter.

We must presume that the facts before him did not warrant him in putting both on the same footing. The facts if fully developed may however be so, and in affirming the judgment, therefore, we do so with leave to the court below to open and reconsider it upon this point should the facts and the law make it just and proper to do so.

Judgment affirmed.