HARRY A. McCORMICK, Plaintiff and Appellant, *v.* J. W. BON-NER, TREASURER OF PUERTO RICO, Defendant and Appellee. JOSEFA ADELA McCORMICK, Plaintiff and Appellant, *v.* J. W. BONNER, TREASURER OF PUERTO RICO, Defendant and Appellee. GLORIA ETHELBERGA McCORMICK, Plaintiff and Appellant, *v.* J. W. BONNER, TREASURER OF PUERTO RICO, Defendant and Appellee. JOSEFA ADELA McCORMICK ET AL., Plaintiffs and Appellants, *v.* J. W. BONNER, TREASURER OF PUERTO RICO, Defendant and Appellee. PALMIRA McCORMICK ET AL., Plaintiffs and Appellants, *v.* J. W. BONNER, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 5446.  Argued February 5, 1932.—Decided January 20, 1933.

*H. Torres Solá* for appellants.  *Charles E. Winter (James R. Beverley* on the brief), *Attorney General,* and *M. Rodríguez Serra, Assistant Attorney General,* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

This was an action by Harry A. McCormick, deceased, to recover from the Treasurer of Puerto Rico the sum of

$2,897.94 with interest. Harry A. McCormick was one of several partners in the firm of a A. Hartman & Co. Directly or indirectly all the partners of that firm brought suit against the Treasurer, but all their causes of action were exactly alike and the cause of Harry A. McCormick is a typical one. The latter on the 27th of February, 1920, made a return to the Treasurer of Puerto Rico of $115,954.05 as benefits received from A. Hartman & Co. A. Hartman & Co. in the record is variously known as a mercantile partnership (*sociedad mercantil*) or as a general partnership (*sociedad colectiva*). During the said year, A. Hartman & Co. was a stockholder in the domestic corporation Yabucoa Sugar Company and received stock dividends from that company calculated in the sum of $97,800. A Hartman & Co. made a return to the Treasurer of Puerto Rico in which this firm showed that its gains for the year 1918 amounted to $579,770.24. Then the firm discovered that $97,800 paid in stock dividends by The Yabucoa Sugar Company was exempt from taxation and in due course the Treasurer of Puerto Rico returned to the said A. Hartman & Co. the amount of the tax that the latter had paid on the said $97,800. Of the aforesaid sum of $579,770.24 Harry A. McCormick was entitled to $115,954.05 and to the other partners a corresponding amount belonged.

Harry A. McCormick, as we have stated, presented a complaint to recover from the Treasurer of Puerto Rico, as similarly unduly paid the sum of $2,897.94. The suit was brought under section 66 of Act No. 80 of 1919, which authorizes a taxpayer under certain conditions to recover from the Treasurer amounts paid. The Treasurer refused to return the amount solicited.

Under the principle of *Eisner* v. *Macomber*, 252 U.S. 189, the shares of the Yabucoa Sugar Company in the hands of A. Hartman & Co. were not taxable as income. This is conceded by the government. The theory of *Eisner* v. *Macomber* is that where stock is uniformly distributed among stock-

holders, the total participation that each stockholder has in the assets or wealth of the corporation is neither increased nor diminished. The theory of the court below was, so far as partners of A. Hartman & Co. were concerned, that dividends in the form of stock of a company other than one issuing the dividends were not exempt from taxation as income and the following cases of the Supreme Court of the United States were cited: *Lynch* v. *Hornby*, 247 U.S. 339, and *Peabody* v. *Eisner*, 247 U.S. 349.

We have given great attention to the record in this case and we are not clear in our minds as to exactly what Harry A. McCormick received from A. Hartman & Co. According to the complaint in the case, the plaintiff received the sum of $15,960 in shares of The Yabucoa Sugar Company. The evidence does not satisfy us that there was any manual tradition from A. Hartman & Co. of any shares of stock of The Yabucoa Sugar Company. There is a possibility, and this appears to be the contention of the appellant from the record, that Harry A. McCormick and his associates received a credit on the books of A. Hartman & Co. of a proportionate share in the stock dividends received from The Yabucoa Sugar Company. Nevertheless the possibility is not totally excluded that Harry A. McCormick received the actual cash and that the entries in the books of A. Hartman & Co. showed the participation of each one of the members of the firm in the shares of stock still held by A. Hartman & Co. Assuming, however, that what Harry A. McCormick received was a proportional part of the shares of stock of the Yabucoa Sugar Company or a credit on the books of A. Hartman & Co. of his share of the $97,800 received by A. Hartman & Co., nevertheless we feel bound to hold that the Treasurer made no mistake in refusing to return the tax. If there was a manual tradition of the said stock or if Harry A. McCormick at any time could get possession of the shares of the said stock, then he received a benefit from A. Hartman & Co. and the cases cited by the court below are applicable.

Of course, if the interest of Harry A. McCormick was reduced below his original investment in A. Hartman & Co. by reason of this tradition, payment or credit, then perhaps he might make claim for a return, but this the appellant did not show and we do not think he could show. Both the return to the Treasurer of A. Hartman & Co. and the return to the Treasurer of Harry A. McCormick nominally showed that each of them had made gains and profits during the calendar year for which the return was made.

We shall indulge in some more general considerations. Let us suppose, as was similarly supposed in the case of *Eisner* v. *Macomber, supra,* that The Yabucoa Sugar Company had $3,000,000 worth of assets represented by 30,000 shares of a value of $100 each; that originally the assets of the company were actually $3,000,000; that by reason of the operations of the said Yabucoa Sugar Company it showed a net profit of $600,000 and the company decided to pay a dividend to its stockholders; that by reason of the necessity of holding its cash assets for the business of the corporation it decided to pay a stock dividend of 20 per cent and did so. We shall also suppose that the value of a share of stock of the Yabucoa Sugar Company before the stock dividend had increased to $120 a share and that upon the declaration of the stock dividend the value of an individual share went back to $100 a share. What A. Hartman & Co. would have received in stock would be 20 per cent of its original holding. If its original holding had been 5,000 shares it would now have 6,000 shares. The 5,000 shares would now be worth $500,000. After the stock dividend the value of all of the shares would be $600,000. Now, if A. Hartman & Co. had decided to sell the shares given by the stock dividend, they would have obtained $100,000 in cash on the stock market and their original holding of $500,000 would in no sense have been diminished and A. Hartman & Co. would have had to pay a tax on the income of $100,000. In other words a share

of stock as a stock dividend is only exempt from taxation so long as it remains in the hands of A. Hartman & Co.

When, therefore, instead of retaining the new shares A. Hartman & Co. decides to turn them over to the members of the firm, each one of the members of the firm receives something of value which under the definition of every Income Tax Law is taxable as income. Each one of the members of the firm has received something that has a taxable value on the market, an assessable value, and was taxable as income.

Again we say, if the appellant, now represented by Dolores Alcaide, could show that the amount that Harry A. McCormick received from A. Hartman & Co. was a diminution of his capital assets, a different case would be presented. He failed to show that his original investment in A. Hartman & Co. was in any way diminished. As we have said before, the case of *Eisner* v. *Macomber,* presupposes that the interest of the stockholders for the moment or at least until a profit arises, is not increased or diminished.

The court comments on the fact that the case of *Eisner* v. *Macomber* was decided by a vote of five to four. The appellant points out that in another case the Supreme Court of the United States affirmed *Eisner* v. *Macomber* with only two dissenting votes. The point that the district court was trying to make, as we understand it, is that *Eisner* v. *Macomber* was a close case and that its principle should be limited more or less to the facts set out in that case, where stock dividend remains in the hands of the stockholders, and not to cases where other entities or other people receive the same stock as things of value.

In arriving at the foregoing conclusion, in addition to the cases already cited, we have consulted among others the following authorities: *United States* v. *Phellis,* 257 U.S. 156; *Miles* v. *Safe Deposit,* 259 U. S. 247; *Cullinan* v. *Walker,* 262 U.S. 134; *Weiss* v. *Stearn,* 265 U.S. 242; *Marr* v. *United States,* 268 U.S. 536; *McDonald* v. *Maxwell,* 274 U.S. 91; *Rockefeller* v. *United States,* 257 U.S. 176; the note to *Eisner*

v. *Macomber,* 9 A.L.R. 1594; *City of Allegheny* v. *Pittsburgh, A. & M. P. Ry. Co.,* 36 Atl. 161; *Morgan* v. *Wisconsin Tax Commission,* 61 A.L.R. 357 and note on page 360.

The position of the Treasurer that the return of Harry A. McCormick shows profit is, therefore, not merely a technical one. Naturally, if Harry A. McCormick had in fact not received any income, then the Treasurer ought in equity and good faith not to attempt to collect any. The taxpayer made a return nominally showing benefits, and the statements as we read the record have not been shown to be mistaken. The substance of the argument is that the appellant or his successor in title had the same right that A. Hartman & Co. had, but this is a case not covered by the principles of *Eisner* v. *Macomber, supra.*

The People of Puerto Rico drew attention to the fact that the taxes were paid voluntarily without protest, that the appellants allowed a year to go by without asking for the return and that the complaints were not filed until 1923.

Section 66 of Act No. 80 of 1919 provides:

"That the Treasurer be, and he is hereby, authorized to remit, reimburse or make restitution for any tax or duty erroneously or unlawfully imposed or collected, as well as of the amount of any fine collected by error or without legal authority therefor.

"That when proper claim has been made to the Treasurer of Porto Rico for the return, reimbursement or remittal of any duties or taxes erroneously or illegally levied or collected, as well as for the amount of any fines collected by error or without legal authority, if he refuses without reason to grant such a claim, the aggrieved party may appeal to the courts of justice, following therefor the procedure authorized and the proceedings established by section 63 of this Act." (Session Laws, 1919, p. 666.)

It is to be noted that the Spanish original of this clause says: "*La parte agraviada podrá entonces recurrir a los tribunales de justicia.*" The word "*entonces*" equivalent to "then" has not been translated and the English should read: "The aggrieved party may then appeal, etc."

Section 63 of the same act provides:

"That the decisions of the Board of Review and Equalization shall be final. In such cases the taxpayer shall pay the tax imposed upon him, within the time fixed in section 55, under protest, and he may interpose within ten days following such payment under protest, a sworn complaint against the Treasurer of Porto Rico and before a court of competent jurisdiction. Said cases shall be given preference and priority on the calendars of the courts, and all defenses against the complaint to be offered by the defendant shall be made at one time and in one bill, and the judge shall decide them at one sole hearing in strict order of precedence. The trial shall be promptly set for final decision and any unwarranted delay on the part of the plaintiff shall be sufficient grounds for a judgment of dismissal." (Session Laws, pages 664 and 666.)

In this regard we said in the case of *Serrallés* v. *Treasurer*, 30 P.R.R. 220, 223:

"The appellee insists that the complaint does not adduce facts sufficient to constitute a cause of action. He alleges that in addition to section 66 of Act No. 80 of 1919, sections 61, 62 and 63 thereof are also applicable, and that inasmuch as it is not alleged in the complaint that an appeal was taken to the Board of Review and Equalization, or that the tax was paid under protest, the plaintiff has no right of action.

"We do not entertain this view. It is true that section 66 prescribes that the action shall follow the procedure authorized and the proceedings established by section 63, but this clearly refers to the time within which to bring the action, to the title of the complaint and to the manner of prosecuting the action in court, all of which is to be found in section 63, and it is not necessary to supplement the intent of the legislators by the provisions of sections 61 and 62. Clearly the cases are different. The law is liberal and affords ample opportunities for correcting any error or repairing any injustice; first, when the taxpayer takes the first step and, second, when after the tax is levied and collected without difficulty or protest the taxpayer requests the refund of what in his opinion was unlawfully collected from him."

This case is a clear authority for the fact that it is not necessary to go to the Board of Review and Equalization or to pay under protest.

Reverting to section 66, it is evident that after refusal by the Treasurer the person aggrieved then may resort to the courts. As was shown in the *Serrallés* case, *supra,* the recourse given is immediate and section 63 only refers to the manner of proceeding in a suit before the court.

As we have said, section 66 of Act No. 80 of 1919 gave the parties in this case the right to ask the return of the taxes as unduly paid. The section further provides that if the Treasurer refuses without reason to grant such a claim, the aggrieved party may resort to the courts. Perhaps it is only another way of stating the principal proposition of this opinion, but we do not think that we should be able to hold, after a voluntary payment by a taxpayer, that the Treasurer refused to return the taxes without any motive whatsoever. In a case where it is dubious whether an amount voluntarily paid by a taxpayer is income or not as here, the refusal of the Treasurer to return the tax can not be considered as inequitable or "without reason."

The judgments appealed from will be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.