HARRY A. McCORMICK, demandante y apelante, *v.* J. W. BONNER, TESORERO DE PUERTO RICO, demandado y apelado. JOSEFA ADELA McCORMICK, demandante y apelante, *v.* EL MISMO, demandado y apelado. GLORIA ETHELBERGA McCORMICK, demandante y apelante, *v.* EL MISMO, demandado y apelado. JOSEFA ADELA McCORMICK, ET AL., demandantes y apelantes, v. EL MISMO, demandado y apelado. PALMIRA McCORMICK, ET ALS., demandantes y apelantes, *v.* EL MISMO, demandado y apelado.

No. 5446.—*Sometido:* Febrero 5, 1932. *Resuelto:* Enero 20, 1933.

*H. Torres Solá,* abogado de los apelantes; *Charles E. Winter (James R. Beverley* en el alegato) y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata de un procedimiento incoado por Harry A. McCormick, ahora muerto, para recobrar del Tesorero de Puerto Rico la suma de $2,897.94, más intereses. Harry A. McCormick era uno de varios miembros en la sociedad A. Hartman & Co. Directa o indirectamente todos los socios de dicha entidad iniciaron procedimiento contra el Tesorero, mas todas sus causas de acción eran exactamente iguales y la de Harry A. McCormick es una típica. En 27 de febrero de 1920 éste archivó sus planillas en la Tesorería de Puerto Rico en las que aparecía que él había recibido de A. Hartman & Co., como beneficios, la suma de $115,954.05.

En los autos se denomina a A. Hartman & Co. indistintamente como una sociedad mercantil o como una sociedad colectiva. Durante dicho año A. Hartman & Co. era accionista de la corporación doméstica Yabucoa Sugar Company y recibió de dicha compañía dividendos en acciones que se calculaban tenían un valor de $97,800. A. Hartman & Co. archivó planillas en la Tesorería de Puerto Rico en las cuales aparecía que sus beneficios para el año 1918 ascendían a $579,770.24. Entonces la sociedad averiguó que los $97,800 pagados como dividendo en acciones por la Yabucoa Sugar Company estaban exentos de contribución y en su oportunidad el Tesorero de Puerto Rico devolvió a dicha A. Hartman & Co. el importe de la contribución que esta última había pagado sobre los $97,800. De los ameritados $579,770.24 Harry A. McCormick tenía derecho a recibir $115,954.05, y a los demás socios pertenecían sumas correspondientes.

Según hemos manifestado ya, Harry A. McCormick presentó demanda para recobrar del Tesorero de Puerto Rico, por haber sido de igual modo indebidamente pagada, la suma de $2,897.94. El pleito fué entablado de conformidad con la sección 66 de la Ley No. 80 de 1919, que autoriza al contribuyente, bajo ciertas condiciones, a recobrar del Tesorero las sumas satisfechas. El Tesorero se negó a devolver la suma solicitádale.

■■■ De conformidad con la doctrina del caso de *Eisner* v. *Macomber,* 252 U. S. 207, las acciones de la Yabucoa Sugar Company en manos de A. Hartman & Co. no eran tributables como ingresos. El gobierno admite esto. La teoría de *Eisner* v. *Macomber* es que cuando se distribuyen uniformemente acciones entre los accionistas, la participación total que cada accionista tiene en el activo de la corporación no es aumentada ni disminuída. La teoría de la corte inferior fué que en lo que a los socios de A. Hartman & Co. se refería, los dividendos en acciones de una compañía distinta a la que declaraba los dividendos no estaban exentos de contribución como ingreso, y citó los siguientes casos de

la Corte Suprema de los Estados Unidos: *Lynch* v. *Hornby*, 247 U. S. 339, y *Peabody* v. *Eisner*, 247 U. S. 347.

Hemos prestado gran atención a los autos elevados en este caso y no tenemos en nuestras mentes un concepto claro respecto a lo que Harry A. McCormick recibió exactamente de A. Hartman & Co. Según la demanda presentada, el demandante recibió la suma de $15,960 en acciones de la Yabucoa Sugar Company. La prueba no nos convence de que hubiera ninguna tradición manual por parte de A. Hartman & Co. de algunas de las acciones de la Yabucoa Sugar Company. Existe la posibilidad, y ésta parece ser la contención del apelante, según se desprende de los autos, que Harry A. McCormick y sus consocios recibieron un crédito en los libros de A. Hartman & Co. de una participación proporcional de los dividendos en acciones recibidos de la Yabucoa Sugar Company. No obstante, no está excluída totalmente la posibilidad de que Harry A. McCormick recibiera el dinero en efectivo y que los asientos hechos en los libros de A. Hartman & Co. demostraran la participación de cada uno de los miembros de la sociedad en las acciones que aun permanecían en poder de A. Hartman & Co. Asumiendo, sin embargo, que lo que Harry A. McCormick recibió fué una parte proporcional de las acciones de la Yabucoa Sugar Company o un crédito en los libros de A. Hartman & Co. por su participación en los $97,800 recibidos por A. Hartman & Co., no obstante, nos sentimos obligados a resolver que el Tesorero no se equivocó al negarse a devolver la contribución. Si hubo tradición manual de dichas acciones o si Harry A. McCormick en algún momento podía obtener posesión de dichas acciones, entonces él recibió un beneficio de A. Hartman & Co. y los casos citados por la corte inferior son aplicables.

Desde luego, si la participación de Harry A. McCormick se redujo a más de su inversión original en la sociedad A. Hartman & Co. con motivo de esta tradición, pago o crédito, entonces quizá él podía solicitar la devolución, mas el,

apelante no ha demostrado esto ni creemos que podía hacerlo. Tanto las planillas presentadas al Tesorero por A. Hartman & Co. como las planillas presentadas al mismo funcionario por Harry A. McCormick nominalmente demostraban que cada uno de ellos había obtenido beneficios y utilidades durante el año natural a que correspondían las planillas.

Entraremos en consideraciones más generales. Supongamos, al igual que se hizo en el caso de *Eisner* v. *Macomber, supra,* que la Yabucoa Sugar Company tenía valores o un activo representado por 30,000 acciones de a $100 cada una; que originalmente el activo de la compañía era realmente $3,000,000; que con motivo de las negociaciones de dicha Yabucoa Sugar Company se obtuvo una ganancia neta de $600,000, y que la compañía decidió declarar un dividendo en favor de sus accionistas; que debido a la necesidad de retener su numerario para los negocios de la corporación, ésta decidió pagar un dividendo de 20 por ciento en acciones, y así lo hizo. Supongamos también que el valor de cada acción de la Yabucoa Sugar Company antes del dividendo en acciones había aumentado a $120 por acción y que al declararse el dividendo en acciones el valor de cada una separadamente volvió a ser $100. Lo que A. Hartman & Co. habría recibido en acciones equivaldría al 20 por ciento de su inversión original. Si hubiese tenido originalmente 5,000 acciones, ahora tendría 6,000. Las 5,000 acciones valdrían ahora $500,000. Después del dividendo en acciones el valor de todas sería $600,000. Ahora bien, si A. Hartman & Co. hubiese decidido vender las acciones dádasle como dividendo, ella habría recibido $100,000 en efectivo en la bolsa y su inversión original de $500,000 en manera alguna se hubiese disminuído y A. Hartman & Co. hubiese tenido que pagar una contribución sobre el ingreso de $100,000. En otras palabras, una acción dada como dividendo tan sólo está exenta del pago de contribución mientras permanece en poder de A. Hartman & Co.

Por tanto, si en vez de retener las nuevas acciones A. Hartman & Co. decide pasarlas a los miembros de la sociedad, cada uno de ellos recibe algo de valor que de acuerdo con la definición dada por toda ley de contribución sobre ingresos es tributable como tal ingreso. Cada uno de los miembros de la sociedad ha recibido algo que tiene un valor tributable en el mercado, un valor sobre el cual se pueden imponer contribuciones, y era tributable como ingreso.

Repetimos que si el apelante, representado ahora por Dolores Alcaide, hubiera podido demostrar que la suma que Harry A. McCormick recibió de A. Hartman & Co. equivalía a una disminución de su capital, se habría presentado un caso distinto. Él dejó de demostrar que su inversión original en A. Hartman & Co. fuera en forma alguna disminuída. Conforme hemos dicho antes, el caso de *Eisner* v. *Macomber* presupone que el interés de los accionistas de momento o hasta tanto surja un beneficio, no se aumenta ni disminuye.

La corte comenta el hecho de que el caso de *Eisner* v. *Macomber* fué resuelto por una votación de cinco contra cuatro. El apelante indica que en otro caso la Corte Suprema de los Estados Unidos confirmó el de *Eisner* v. *Macomber* con dos votos disidentes solamente. El punto que la corte de distrito trataba de hacer resaltar, según nuestro criterio, es que *Eisner* v. *Macomber* fué un caso dudoso y que sus principios deben limitarse más o menos a los hechos que aparecen en dicho caso, en que el dividendo en acciones permanece en poder de los accionistas, y no a casos en que otras entidades o personas reciben las acciones mismas como cosa de valor.

Para llegar a la conclusión que antecede, en adición a los casos ya citados, hemos consultado, entre otras, las siguientes autoridades: *United States* v. *Phellis*, 257 U. S. 156; *Miles* v. *Safe Deposit*, 259 U. S. 247; *Cullinan* v. *Walker*, 262 U. S. 134; *Weiss* v. *Stearn*, 265 U. S. 242; *Marr* v. *United States*, 268 U. S. 536; *McDonald* v. *Maxwell*, 274

U. S. 91; *Rockefeller* v. *United States,* 257 U. S. 176; la nota a *Eisner* v. *Macomber,* 9 A. L. R. 1594; *City of Allegheny* v. *Pittsburgh,* 36 Atl. 161; *Morgan* v. *Wisconsin Tax Commission,* 61 A. L. R. 357 y la nota en la página 360.

La posición del Tesorero de que las planillas de Harry A. McCormick muestran beneficios no es, por tanto, meramente técnica. Naturalmente, si Harry A. McCormick no hubiese en realidad recibido ninguna utilidad, entonces el Tesorero en equidad y buena fe no debía tratar de cobrarle contribuciones. El contribuyente presentó unas planillas que nominalmente mostraban beneficios, y, conforme vemos los autos, no se ha demostrado que las aseveraciones en ellas contenidas fuesen erróneas. La substancia del argumento es que el apelante o su causahabiente tenía los mismos derechos que A. Hartman & Co., mas éste no es un caso comprendido en los principios de *Eisner* v. *Macomber, supra.*

█ █ El Pueblo de Puerto Rico llamó nuestra atención al hecho de que las contribuciones fueron pagadas voluntariamente y sin protesta alguna, que los apelantes permitieron que transcurriera un año sin solicitar su devolución y que las demandas no fueron radicadas hasta el año 1923. La sección 66 de la Ley No. 80 de 1919, provee:

"El Tesorero queda por la presente autorizado para condonar, reintegrar o restituir toda contribución, o derecho errónea e ilegalmente impuestos o recaudados, así como el importe de toda multa recaudada por error o sin autoridad legal.

"Si el Tesorero de Puerto Rico, una vez presentada ante él la reclamación oportuna interesando la devolución, reintegro o condonación de todo derecho o contribución errónea o ilegalmente impuestos o recaudados, así como el importe de toda multa recaudada por error, o sin autoridad legal, se negare sin motivo alguno a conceder el objeto de dicha reclamación, la parte agraviada podrá entonces recurrir a los tribunales de justicia, siguiendo para ello el trámite autorizado y el procedimiento establecido en la Sección 63 de esta Ley." Leyes de ese año, pág. 667.

La sección 63 de la misma ley dispone:

"Las resoluciones de la Junta de Revisión e Igualamiento serán finales. El contribuyente deberá satisfacer bajo protesta la contribución que le haya sido impuesta dentro del plazo fijado en la sección 55, pudiendo interponer, dentro de los 20 días siguientes al pago bajo protesta, la correspondiente demanda contra el Tesorero de Puerto Rico ante la corte de distrito competente.

"Estos pleitos tendrán preferencia y prelación en los calendarios de las cortes; todas las defensas que el demandado haya de oponer a la demanda deberán ser formuladas a la vez en un solo escrito y el juez las resolverá en una sola vista por orden estricto de precedencia; el juicio se señalará rápidamente para su resolución definitiva y cualquier dilación injustificada por parte del demandante será motivo para dictar sentencia por desistimiento." Leyes de ese año, págs. 665 y 667.

A este respecto dijimos en el caso de *Serrallés* v. *Tesorero*, 30 D.P.R. 237, 240:

"La parte apelada insiste en sostener que la demanda no aduce hechos suficientes para determinar una causa de acción. Alega que son aplicables, además de la sección 66 de la Ley No. 80 de 1919, las secciones 61, 62 y 63 y que como en la demanda no se expresa que se acudiera a la Junta de Revisión e Igualamiento, ni que se pagara la contribución bajo protesta, carece de acción el demandante.

"No estamos conformes. Es cierto que la sección 66 prescribe que en la apelación que se establezca se siga el trámite marcado en la sección 63, pero ello claramente se refiere al término para recurrir, a la titulación de la demanda y a la manera como se tramita el pleito en la corte, todo lo que se encuentra en la propia sección 63, sin que sea necesario completar el pensamiento del legislador con lo dispuesto en las secciones 61 y 62. Claramente se trata de casos distintos. La ley es en verdad liberal y ofrece amplias oportunidades para corregir cualquier error o reparar cualquier injusticia, primero cuando el contribuyente gestiona desde el principio y segundo cuando tramitada la imposición de la contribución y su cobro sin dificultades ni protestas, el contribuyente pide que se le reintegre lo que a su juicio se le cobró indebidamente."

Este caso sirve claramente de autoridad al hecho de que no es necesario acudir a la Junta de Revisión e Igualamiento ni pagar bajo protesta.

Volviendo a la sección 66, es evidente que después de la negativa del Tesorero la persona perjudicada puede entonces acudir a las cortes. Según se demostró en el caso de Serrallés, *supra,* el recurso dado es inmediato y la sección 63 se refiere solamente a la manera de proceder en un pleito que esté ante la corte.

Conforme hemos dicho, la sección 66 de la Ley No. 80 de 1919 concede a las partes en este caso el derecho a solicitar la devolución de las contribuciones indebidamente pagadas. La ley provee, además, que si el Tesorero se negare sin motivo alguno a conceder el objeto de dicha reclamación, la parte agraviada podrá entonces recurrir a los tribunales de justicia. Tal vez sea solamente otra forma de expresar la proposición principal de esta opinión, mas no creemos que podamos resolver, después de haberse efectuado un pago voluntario por el contribuyente, que el Tesorero se negó a devolver las contribuciones sin motivo alguno. En un caso como el presente en que sea dudoso si una cantidad voluntariamente pagada por un contribuyente es ingreso o no, la negativa del Tesorero a devolver la contribución no puede ser considerada como no equitativa o infundada (*without reason*).

*Deben confirmarse las sentencias apeladas.*

El Juez Asociado Señor Córdova Dávila no intervino.