## Gulf Oil Corp. v. Leonard W. Morrison, Commissioner of Taxes

[141 A2d 671]

January Term, 1958.

Opinion Filed March 5, 1958.

Opinion on Motion for Reargument Filed May 11, 1958.

*Edmunds, Austin & Wick* and *Irving H. Bull* (of the New York Bar) for the petitioner.

*Frederick M. Reed*, Attorney General, and *Stephen B. Richardson*, Deputy Attorney General, for the petitionee.

**Cleary, J.** This is a petition brought by the Gulf Oil Corporation for review of a determination made by the Commissioner of Taxes with respect to the Vermont Franchise Tax assessed against the Corporation for the calendar year 1954. The petitionee demurred to the petition. The demurrer was sustained by the county court and the cause passed to this Court pursuant to V. S. 47, §2124. The facts set forth in the petition, including "Exhibit A" attached thereto, are as follows:

During the calendar year 1954 the Gulf Oil Corporation, a corporation organized and existing under the laws of the State of Pennsylvania and authorized by the commissioner of foreign corporations of the State of Vermont to engage in the business of marketing petroleum and petroleum products in Vermont, was engaged in that business. During that year the petitioner engaged in no other business in Vermont, but did engage in extensive business operations outside Vermont, both in the United States and foreign countries. During the calendar year 1954, the petitioner received dividends from various United States corporations totalling $149,494,490 in addition to its other income. It also received dividends from various foreign corporations totalling $20,478,991. These dividends were received from shares of stock owned by the petitioner in the other corporations, and $165,709,950 of the dividends were received from subsidiaries wholly owned by the petitioner. None of the corporations from which the petitioner received dividends did any business in Vermont, owned any property in Vermont, or paid any salaries or wages for services performed in Vermont, and no activity on the part of any of these corporations had any relationship either to the petroleum or petroleum products marketed in Vermont or to the marketing thereof.

In its 1954 Vermont Franchise Tax return the petitioner claimed a deduction for dividends received from United States corporations of $118,639,082 provided for by the 1954 Internal Revenue Code of the federal government. The petitioner reported an allocation factor of .003378, which produced taxable income in Vermont of $69,936 according to the petitioner's computations, and on this income the petitioner paid its tax of $2797.44. The Commissioner of Taxes of Vermont dis-

allowed the deduction of $118,639,082 and assessed an additional franchise tax of $16,030.53, which the petitioner paid under protest.

The petitioner argues that the Vermont Franchise Tax law, as it has been interpreted and applied to the petitioner by the Commissioner of Taxes, is unconstitutional under the due process clause of the fourteenth amendment of the Constitution of the United States, because the amount of the petitioner's net income allocated to Vermont, to the extent that it reflects approximately $574,000 (.003378 of $169,973,471) of dividends received by the petitioner from various United States and foreign corporations, is out of all appropriate proportion to the business transacted by the petitioner in Vermont, and has no relationship either to the privilege granted by Vermont to the petitioner to transact the business of marketing petroleum and petroleum products in Vermont or to any function actually performed by the petitioner in Vermont.

At the time the tax became due those portions of the Vermont statutes which are material were as follows: V. S. 47, §950 provided: "For the privilege of exercising its franchise in this state in a corporate or organized capacity and, for the privilege of doing business in this state, every foreign corporation liable to tax shall annually pay to this state a franchise tax to be measured by its net income to be computed, in the manner hereinafter provided, at the rate of four per cent upon the basis of its net income as herein computed for the next preceding income year." V. S. 47, §951 provided: "Allocation of net income to state business. If the entire business of the corporation is not transacted within the state and its gross income is derived from business done both within and without the state, the tax imposed shall be measured by the net income of the corporation for the income year from business done within the state. Such net income shall be apportioned so as to allocate to the State a fair and equitable proportion of such income. Such allocation shall be made normally on the basis of the following factors, equal weighting to be given to each:

I. The average of the value of all the real and tangible personal property, (a) at the beginning of the taxable year and

(b) at the end of the taxable year, within the state, expressed as a percentage of all such property both within and without the state;

II. The total wages, salaries, and other personal service compensation paid during the taxable year, to employees within the state, expressed as a percentage of all such compensation paid whether within or without the state;

III. The gross sales, or charges for services performed, within the state, expressed as a percentage of such sales or charges whether within or without the state.

In special cases where, in the judgment of the commissioner such application of the above factors does not result in fair and equitable allocation to the state, such net income shall be allocated in accordance with rules and regulations prescribed by the commissioner."

V. S. 47, §949 (VII) provided: "Net income means the total net income for the income year, as defined under the Internal Revenue Code of the United States in effect June 1, 1947." Under the Internal Revenue Code of the United States in effect June 1, 1947 no deduction for dividends was permitted. The Internal Revenue Code as it existed at that time provided for a credit against net income, after net income had been determined. It was only after the enactment of the Internal Revenue Code of 1954 that a deduction was authorized under the federal law. Title 26, section 26 (b) (1), and Title 26, section 243 (a), of the Internal Revenue Code of 1939 and 1954, United States Code Annotated.

The petitioner asserts its claim of violation of the Constitution of the United States is supported by *Hans Rees' Sons, Inc.* v. *North Carolina*, 283 US 123, 51 S Ct 385 75 L Ed 879; *Connecticut General Life Ins. Co.* v. *Johnson*, 303 US 77, 58 S Ct 436, 82 L Ed 673, and *Alpha Portland Cement Co.* v. *Knapp*, 230 NY 48, 129 NE 202. In the Rees case the court held that the statutory method, as applied to the appellant's business, operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income, 85%, out of all appropriate proportion to the average income, 25%, having its source in that State. The state statute designated the tax as an income

tax and the allocation formula took into account only assets of the corporation. In the Connecticut General Life Insurance Co. case the statute taxed the gross premiums received on the company's business done in California but the tax assessed included premiums on policies effected in Connecticut. The facts and the State statute there considered were so different that the case does not control the case now under consideration. That is also true of *Alpha Portland Cement Co.* v. *Knapp.* Although that case supports the petitioner's contention, the Court there held that the tax imposed was a tax upon income and that the method of apportionment was arbitrary and unreasonable.

In *Union Twist Drill Co.* v. *Harvey,* 113 Vt 493, 508-511, 37 A2d 389, this Court held our tax to be for the privilege of doing business here and not to be a direct tax on income; that what is required is that a formula of apportionment shall not be intrinsically arbitrary and that it will be sustained unless it is shown that as applied to the particular case, it operates unreasonably and arbitrarily; that each case must be decided on its own merits; that the allocation formula there used could not be said to be intrinsically arbitrary and that the record did not make it appear that it operated unreasonably and arbitrarily. Since that case was decided an additional factor has been added to the allocation formula so as to provide even greater scope in the allocation.

None of the income from dividends that the petitionee included in his computation was received as claimed by the petitioner from foreign non-United States corporations, and nearly all of it was received as dividends from the petitioner's wholly owned subsidiaries. The tax was not assessed against the corporations that paid the dividends or against the property of such corporations. In its Vermont Franchise Tax return the petitioner reported its income from dividends as part of its net income computation for its federal return. Therefore it was an integral part of the computation of net income for purposes of allocation under the statutes from which we have quoted *supra,* even though the corporations from which the petitioner received its dividends had no direct relationship with the petitioner's business in Vermont.

The petitioner argues that the effect of the petitionee's determination has been to reflect in the petitioner's net income allocated to Vermont approximately $574,000 (.003378 of $169,973,471) of the dividends received by the petitioner. It is clear that what the petitionee actually did was to allocate $470,698.82 of the petitioner's net income for 1954 to Vermont. This resulted by adding .003378 of $118,639,082, which latter amount the petitioner had deducted from its return of net income, to the taxable income which the petitioner reported as taxable in Vermont. For the year 1954 the petitioner reported sales in Vermont of $5,822,675, wages and salaries of $283,594 and property in Vermont of the value of $1,916,339. The ratio of sales in Vermont to sales within and without Vermont exceeded the allocation percentage used by more than 44% of the percentage used. The figures furnished by the petitioner in its return refute its claim that the amount of net income allocated to Vermont was out of all reasonable proportion to the business the petitioner transacted here. The tax imposed was .04 of .003378, namely, .00013512 of the petitioner's net income. The allocation factor was derived by strict compliance with our statute and was the one supplied by the petitioner in its return.

█ Finally the petitioner claims that the assessed tax was illegal, because in making his determination the Commissioner of Taxes imposed a tax on dividends earned wholly without Vermont, without including as a factor in his allocation formula the value of the stock of the corporations located wholly without Vermont from which the petitioner received the dividends. The statute law which we have quoted *supra* did not provide that intangible personal property be considered as a factor in the allocation formula, so the Commissioner had no authority to consider it.

█ In an endeavor to impose upon a foreign corporation authorized to do business here its fair share of the burden of taxation it is a difficult, if not impossible task, specifically to allocate the income earned within the state. No process of apportionment can be expected to produce an exact result, nor is this essential to its validity. It would be substantially

impossible to administer the law under such a rigid rule. *Union Twist Drill Co.* v. *Harvey*, 113 Vt 493, 509, 37 A2d 389. See also *Underwood Typewriter Co.* v. *Chamberlain*, 254 US 113, 41 S Ct 45, 65 L Ed 165, and *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Commission*, 266 US 271, 45 S Ct 82, 69 L Ed 282. Moreover, it is impossible to devise an allocation factor which will provide for every conceivable factor. Here the items used were tangible property, sales and payroll, all easily ascertained and readily assignable. To go farther would destroy simplicity.

■■ A demurer admits, for the purpose of its consideration, facts well pleaded. *Theberge* v. *Canadian Pacific Railway Company*, 119 Vt 193, 197, 122 A2d 848. But one who attacks a formula of apportionment carries a distinct burden of showing by clear and cogent evidence that it results in extraterritorial values being taxed. *Union Twist Drill Co.* v. *Harvey*, 113 Vt 493, 510, 37 A2d 389. In the present case the petition does not allege and its attached Exhibit does not show the value of the stocks from which the taxed dividends were received, how and from what source the stocks were obtained, how they were paid for or that all of their value was extraterritorial to Vermont. The petition does not allege how the failure to include the value of the stocks owned by the petitioner in foreign United States corporations as a factor in the allocation formula worked such an arbitrary result as to make the statute unconstitutional. The petition failed to allege any facts which, if proved, would establish the arbitrary result of taxing extraterritorial value. The allegations, standing alone, do not isolate the income which the petitioner received as dividends from its Vermont operations.

■ We hold that the tax in question is an annual tax on the privilege of doing business in Vermont and is not a direct tax on income, that, from the record before us, it does not appear that the formula of apportionment was intrinsically arbitrary, that the allocation formula used operated unreasonably and arbitrarily, or that the tax imposed violated the constitutional rights of the petitioner.

*The order of the county court sustaining the demurrer is affirmed and the cause remanded.*

## On Motion for Reargument

**Cleary, C. J.** Since the foregoing decision was handed down counsel for the plaintiff have filed a motion for reargument, briefs were filed by both parties and hearing had on the motion. The procedure and law applicable to and the object of such motions have been stated so many times in our opinions that it should not be necessary to repeat them. *Leblanc v. Deslandes*, 117 Vt 248, 255, 90 A2d 802; *State* v. *Haskins*, 120 Vt 288, 139 A2d 827.

The motion contains three grounds. They merely debate points which were thoroughly discussed in previous briefs, were fully argued before us and were specifically passed upon in the opinion.

The first two grounds insist that this case is controlled by *Alpha Portland Cement Co.* v. *Knapp*, 230 NY 48, 129 NE 202. As pointed out in our original opinion the conclusion of the New York court on different facts and on a different statute does not control in the case before us, and especially where our own court has decided differently.

The third ground is that we should have considered the figures furnished by the petitioner in its tax return in the light of the allegations in the petition. It is plainly apparent from the opinion that we did so.

All issues presented in the cause were decided after due consideration. We have carefully considered the present motion, the briefs and the oral arguments of counsel. No reason for granting a reargument is made to appear. *First National Bank* v. *Nativi*, 115 Vt 15, 22-23, 49 A2d 760, and cases there cited.

*The motion for reargument is denied. Let full entry go down.*