## F. W. Woolworth Company v. Commissioner of Taxes

[298 A.2d 839]

No. 30-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed December 5, 1972

546

*Paterson, Gibson, Noble & Brownell,* Montpelier, and *Michael Bray, Esq.,* of *Davies, Hardy, Ives & Lawther,* New York, N.Y., of counsel; *Coffrin, Pierson, Affolter & Amidon,* Burlington; *J. Dwight Evans, Esq.,* and *Jerome R. Hellerstein, Esq.,* New York, N.Y., of counsel, on *amicus* brief of Mobil Oil Corporation, for Plaintiff.

*James M. Jeffords,* Attorney General, *Martin K. Miller,* Assistant Attorney General, *Murray Drabkin, Esq.,* and *Lee H. Spence, Esq.,* Washington, D.C., of counsel, for Defendant.

**Keyser, J.** The Vermont tax department under 32 V.S.A. § 5833 assessed additional corporate income taxes against

the appellant, F. W. Woolworth Company, totaling $12,735.85 for the years 1966, 1967, 1968 and 1969. Excepting for minor adjustments these assessments resulted from the disallowance of an exclusion from the company's income of the "foreign tax credit dividend gross-up" which the appellant had reported as income on its federal income tax return. Upon appeal to and hearing by the Commissioner of Taxes under 32 V.S.A. § 5883, the assessments were upheld by the commissioner's determination. Appeal from the decision of the commissioner to the Washington County Court followed. The lower court found by its Finding No. 12 "That Appellant's taxable income in Vermont is measured by the taxable income as shown on the federal tax return even though it includes the 'deemed paid gross-up' of foreign dividends" and by its order dismissed the appeal. The case is here on appeal from this order of the court.

The issues presented for review by the appellant are three-fold:

"1. Is the 'Gross-Up' of foreign dividends income, and therefore, subject to Vermont taxation?

2. Would the treatment of 'Gross-Up' as subject to Vermont income taxation violate the fourteenth amendment to the United States Constitution?

3. Should the apportionment formula be modified as provided by 32 V.S.A. § 5833(b) because that formula is intrinsically arbitrary when applied to taxpayers with extensive foreign subsidiary operations?"

Woolworth is a New York corporation and has done business in Vermont since 1912. It operates a chain of retail mercantile stores in the United States, as well as in foreign countries, seven of which are presently located in Vermont. Woolworth's foreign business is through subsidiary corporations which operate like businesses in the United Kingdom, West Germany and Mexico. It received dividends from these subsidiaries in addition to its other income.

The state and federal income tax statutes to be considered for a full understanding of the relationship of the "gross-up" to Vermont's tax law necessary to pass upon the issues

presented brings into focus the various relevant laws and their application to the issues.

Prior to the enactment of Act No. 61 of the Public Acts of the Special Session of 1966, corporations doing business in Vermont were taxed through what was known as the Vermont Franchise Tax. The franchise tax was an annual tax on the privilege of doing business in Vermont, and was not a direct tax on income. However, it did involve a computation of net income of the corporation since the tax was based on the net income of the corporation. *Hoosier Engineering Co.* v. *Commissioner of Taxes,* 124 Vt. 341, 342–43, 205 A.2d 821 (1964) ; *Gulf Oil Corporation* v. *Morrison,* 120 Vt. 324, 327–28, 141 A.2d 671 (1958).

Although as originally enacted, the allocation formula used in the computation of the franchise tax did not utilize all the factors found in the present allocation formula, 32 V.S.A. § 5833, an additional factor was later added to better reflect the corporation's business activities in Vermont. *Gulf Oil Corporation* v. *Morrison, supra,* 120 Vt. at 328. The original formula only included property and sales of the corporation, and it did not include the corporation's payroll. Compare *Union Twist Drill Co.* v. *Harvey, Commissioner of Taxes,* 113 Vt. 493, 498, 37 A.2d 389 (1944), with *Gulf Oil Corporation* v. *Morrison, supra,* 120 Vt. at 326–27.

The only other case which dealt with the franchise tax was *Fairbanks, Morse & Co.* v. *Commissioner of Taxes,* 114 Vt. 425, 47 A.2d 123 (1946); which dealt with an issue other than the allocation formula. That issue was whether Fairbanks, Morse & Company could deduct its federal excess-profits taxes in computing its franchise tax.

In *Gulf Oil Corporation* v. *Morrison, supra,* the Court was called upon to decide whether dividends received from wholly owned subsidiary corporations (U.S. and foreign) and from other corporations doing no business in Vermont could be included in the allocation formula and not constitute a deprivation of due process. Gulf attempted to exclude these dividends from its net income from which Vermont's allocation was made, and the Commissioner of Taxes refused to allow the exclusion. In its discussion of the inclusion of dividend income, the Court said:

"The statute law which we have quoted *supra* did not provide that intangible personal property be considered as a factor in the allocation formula, so the Commissioner had no authority to consider it." *Id.* 120 Vt. at 329.

In its holding the Court in *Gulf Oil Corporation* v. *Morrison, supra,* 120 Vt. at 330, held the inclusion of dividends in the allocation formula did not serve to make the formula operate in an arbitrary manner.

In *Hoosier Engineering Co.* v. *Commissioner of Taxes, supra,* the taxpayer objected to the inclusion of an item of income representing a capital gain on the sale of shares of stock in Canadian Hoosier Co. Ltd., a Canadian corporation. There the Court was controlled by *Gulf Oil Corporation* v. *Morrison, supra,* and held the capital gains was properly includable in the formula as an item of net income based on the federal code. *Hoosier Engineering Co.* v. *Commissioner of Taxes, supra,* 124 Vt. at 344–45.

This Court's approach towards the inclusion of such items of net income as dividends and capital gains in its allocation formula for franchise taxation purposes has been accepted in other jurisdictions. The basic rationale for their inclusion was stated in *F. W. Woolworth Co.* v. *Director of Div. of Taxation,* 45 N.J. 466, 213 A.2d 1, 9 (1965) where that court said: ". . . the realistic value of the exercise of a franchise in a particular state is enhanced and contributed to by the worth or income of the entire enterprise everywhere . . . ." Typically this approach is followed where there is a unity of use and management of the enterprise being taxed. *F. W. Woolworth Co.* v. *Director of Div. of Taxation, supra.*

Effective January 1, 1966, Act No. 61 of the Public Acts of the Special Session of 1966, replaced the Vermont Franchise Tax on corporations, and enacted the Vermont corporate income tax under which this appeal is brought.

It goes without saying that the ultimate purpose of income tax statutes is to raise revenue for the state. *Dostal's Inc.* v. *Wright, Commissioner of Taxes,* 129 Vt. 322, 325, 277 A.2d 125 (1971). The basic structure of the Vermont cor-

porate income tax rests on the use of the taxable income as actually reported to the Federal government under the Internal Revenue Code, which is there defined as gross income minus deductions.

The purpose of Chapter 151, Vermont Statutes Annotated, relating to income taxes is expressed in 32 V.S.A. § 5820(a) as follows:

> "§ 5820. Purpose.
>
> (a) This chapter is intended to conform the Vermont personal and corporate income taxes with the United States Internal Revenue Code, except as otherwise expressly provided, in order to simplify the taxpayer's filing of returns, reduce the taxpayer's accounting burdens, and facilitate the collection and administration of these taxes."

The income tax provisions for corporations is under 32 V.S.A. § 5832 which uses as the basis for taxation the "Vermont net income" of the corporation. At the time in point here, "Vermont net income" was defined by 32 V.S.A. § 5811(18) as follows:

> "(18) 'Vermont net income' means, for any taxable year and for any corporate taxpayer, the taxable income of the taxpayer for that taxable year under the laws of the United States, excluding income which under the laws of the United States is exempt from taxation by the states."

Under § 5832 the tax is levied "upon the income earned or received in the taxable year by every taxable corporation" and, at the time in question, was at the rate of "5 per cent of the Vermont net income of the corporation for that taxable year allocated or apportioned to this state."

Section 5888, entitled "Determination of taxable income . . . under the laws of the United States," provided, in pertinent part:

> "[A] taxpayer's taxable income . . . under the laws of the United States shall be determined by reference to

the judicial decisions and administrative rulings of the United States.

"(1) A determination by the United States which establishes the amount of a taxpayer's taxable income . . . under the laws of the United States for any taxable year shall be binding on the taxpayer and the state in calculating the taxpayer's liability to Vermont under this chapter. . . .

"(2) For any taxable year, the payment to the United States by any taxpayer of an aggregate amount of income tax . . . shall be *prima facie* evidence, for purposes of this chapter, that . . . the items of income, deductions, exemptions and credits with respect to which the income tax liability was calculated are the items of income, deductions, exemptions and credits of the taxpayer for that taxable year under the laws of the United States."

The term "gross-up" comes from § 78 of the Internal Revenue Code, and it represents one step a corporation with foreign subsidiaries that meet certain conditions found in § 902 takes in the computation of its taxable income.

In computing its federal income tax, a corporation may deduct income tax paid to a foreign country under § 164 or credit that amount under § 901 against its tax liability. The § 901 credit is a "direct foreign tax credit."

In § 902 a domestic corporation owning: (1) at least 10% of a foreign corporation, and (2) receives dividends from that corporation, may take a "deemed paid foreign tax credit" in an amount such dividend bears to the income taxes paid in the foreign countries. A corporation electing to take such a foreign tax credit must credit to its gross income the amount of the foreign income tax before it takes the credit. This is known as "grossing-up." The purpose of "gross-up" is to avoid giving the taxpayer both a credit and a deduction for the foreign tax, which would otherwise result from the allowance of a full credit against tax liability computed only on the dividend paid.

552

■ Once a corporation elects to take a § 902 tax credit, it is receiving a tax benefit which involves the piercing of the corporate veil and the subsequent exposure of the foreign corporation for what it is; that being a subsidiary corporation controlled at least in part by the taxpayer.

■ The Vermont net income is taken from the federal income tax return at a point when the "gross-up" has been added to that figure but before the credit has been taken. Thus Vermont takes the income figure from the federal return at a point when for purposes of the federal return the taxpayer is in the middle of this accounting procedure.

The allocation formula, 32 V.S.A. § 5833, upon which this appeal is focused, uses the "Vermont net income" of the corporation in its apportionment of income. That formula requires a corporation doing business both within and without Vermont to allocate a portion of its income to Vermont by making the following computations:

1. The Corporation must determine its "Vermont net income". Under the laws applicable during the tax years in dispute, this meant the corporation used the same figure it used for its taxable income in its federal income tax. Because of the manner in which "gross-up" works on the federal level this meant the taxpayer had to include "gross-up" in its "Vermont net income".

2. The corporation must figure the average value of all its property (real and tangible) within the state and express that as a percentage of all such property both within and without Vermont. This was done at both ends of the year.

3. The corporation must figure the total wages, salaries, and other personal service compensations paid to employees in Vermont, and express it as a percentage of all such compensation paid whether within or without Vermont.

4. The corporation must figure its gross sales, or charges for services performed in Vermont and express that as a percentage of all such sales or charges for services performed whether within or without Vermont.

5. The arithmetic average of the percentage figures arrived at in steps 2, 3, and 4 must then be computed.

6. The "Vermont net income", as figured in step 1, is then multiplied by the arithmetic average found in step 5.

7. To arrive at its Vermont corporate income tax the taxpayer must finally go to 32 V.S.A. § 5832 and multiply the figure arrived at in step 6 by 5%. If the resulting figure exceeds $25.00, that is the taxpayer's tax; otherwise, it is $25.00.

Contained within 32 V.S.A. § 5833(b), provision is made for modifications of the 32 V.S.A. § 5833(a) formula if it does not fairly represent the extent of the business activities of the corporation within Vermont. Modification may be made upon petition of the corporation, or upon requirement of the commissioner, if reasonable.

█ Woolworth elected to claim the foreign tax credit rather than use it as a deduction of income. In this situation, having adopted the gross-up rule, Woolworth must, and did, include as income on its federal tax return, the taxes deemed paid. This "gross-up" income is then treated as a dividend for all United States tax purposes. Internal Revenue Code § 78. Furthermore, this gross-up income for the years in question does not fall within the provisions of § 5811(18) "excluding income which under the laws of the United States is exempt from taxation by the states" since such income is not exempt under the Federal law from taxation by the states, nor is it claimed to be by appellant. Woolworth's taxable income was determined by the United States under the federal laws to include the "gross-up" and is binding on the taxpayer and Vermont in calculating the taxpayer's income tax liability to Vermont. 32 V.S.A. § 5888(1). Furthermore, the item in question was not "expressly exempted from taxation" by Chapter 151.

Appellant contends that gross-up does not fit into the definition of "income" under the decisions of the United States Supreme Court that there must accrue, at the very least,

some economic benefit or accession to wealth to the taxpayer before he can be said to have realized "income." There is no finding that by the election to use the gross-up rule the appellant did not realize an economic benefit. It clearly appears from the record, however, that the contrary is shown to be the fact. Woolworth's Vermont and federal income tax returns disclose that it gained a decided tax advantage dollar-wise by exercising the option to use gross-up as a credit on its federal tax liability.

Construing the provisions of the pertinent tax statutes, we conclude it was the clear intent of the legislature that appellant's tax base must include the gross-up. We find no error in Finding No. 12 of the county court that the appellant's Vermont taxable income is measured by the taxable income as shown on its federal tax return. This exception is overruled.

The appellant challenges the constitutionality of the apportionment formula.

Although the decisions in which the due process clause has been discussed in the context of state taxation have not defined the constitutional limitations with precision, it is still possible to draw several guidelines from them.

 Central to the constitutionality of a formula of apportionment is that the tax base be apportioned to the taxing state on a reasonable basis so that extraterritorial values will not be taxed. Thus, it logically follows that one who attacks a formula of apportionment carries a distinct burden of showing by clear and cogent evidence that it results in extraterritorial values being taxed. *Butler Bros.* v. *McColgan*, 315 U.S. 501, 507 (1942) ; *Gulf Oil Corporation* v. *Morrison, supra,* 120 Vt. at 330. The United States Supreme Court has long recognized the practical impossibility of a state's achieving perfect apportionment of expensive complex business activities and has declared that rough approximation rather than precision is sufficient. *International Harvester Co.* v. *Evatt,* 329 U.S. 416, 422 (1947) ; *Union Twist Drill Co.* v. *Harvey, supra,* 113 Vt. at 509.

 The standard three factor formula has been approved by the United States Supreme Court upon the justification it

is a rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates. Moreover, the three factor formula is used by a majority of the states imposing corporate income taxes. *General Motors Corporation* v. *District of Columbia,* 380 U.S. 553, 559–61 (1965). The formula found at 32 V.S.A. § 5833 is just such a formula. See *F. W. Woolworth Co.* v. *Director of Div. of Taxation,* 45 N.J. 466, 213 A.2d 1, 17–18 (1965) where New Jersey's three factor formula was upheld by its Supreme Court.

The only case in recent years in which the United States Supreme Court found the application of an apportionment formula based on income unconstitutional was *Hans Ree's Sons, Inc.* v. *North Carolina,* 283 U.S. 123 (1931), which was discussed by this Court in *Gulf Oil Corp.* v. *Morrison, supra,* 120 Vt. at 327–28. In *Gulf Oil* this Court held "that, from the record before us, it does not appear that the formula of apportionment was intrinsically arbitrary, that the allocation formula used operated unreasonably and arbitrarily, or that the tax imposed violated the constitutional rights of the petitioner."

The most recent case reflecting the United States Supreme Court's view towards state tax apportionment methods is *Norfolk and Western Railway Co.* v. *Missouri Tax Commission,* 390 U.S. 317 (1968), in which the Court invalidated an *ad valorem* property tax under the due process clause which was assessed on the basis of the rolling stock of the railroad within Missouri. There the railroad was able to show on tax day it had rolling stock in the state valued at $7,600,000, an amount far below $19,981,000, the value arrived at by the Commission through the use of its formula. Although the tax used the value of property as its basis rather than income (as in the case at bar) the case still demonstrates what the court will have to be shown before it will declare a tax invalid under the due process clause.

Quite clearly the result achieved by the Commissioner's application of 32 V.S.A. § 5833(a) to Woolworth nowhere reaches the dimensions which were dealt with in *Hans Ree's*

or in *Norfolk and Western.* For this reason, we conclude that the formula as applied to Woolworth is constitutional.

Lastly Woolworth contends that under 32 V.S.A. § 5833(b) the apportionment formula should have been adjusted by the tax commissioner as it requested because it is arbitrary.

The matter of adjustment of the formula is another matter quite apart from the constitutional question. Under 32 V.S.A. § 5833(b) adjustment of the formula may be made, "[I]f the application of the provisions of this section does not fairly represent the extent of the business activities of a corporation within this state. . . ."

The lower court stated in Finding No. 14 "That the Commissioner of Taxes did not abuse his discretion under Title 32 V.S.A. 5833(b), in that the Court is unable to find by competent evidence that the three factor formula does not fairly represent the extent of the appellant's business activities with the state of Vermont." The court cited in its findings the case of *Hoosier Engineering Co.* v. *Commissioner of Taxes, supra,* as support of this finding. The first difficulty with this finding stems from the lower court's reliance upon *Hoosier.* In *Hoosier* the Court was not called upon to decide if adjustment was called for once the disputed item was included in the formula. Here we have already found the "gross-up" is to be included in the formula, much as the capital gains in *Hoosier,* and are now going one step beyond *Hoosier* to determine if the lower court properly found the result achieved fairly represented the extent of Woolworth's business activities in Vermont. The other difficulty with this finding comes from the lower court's failure to recognize that once it had properly determined the "gross-up" was to be included in the formula, it had included an item of income which Woolworth was able to show had its origin in the operation of Woolworth's foreign subsidiaries. Moreover, the stipulated facts establish that this item of income represented about $20,000,000 out of a Vermont net income of about $71,000,000 for a typical year of the tax years in question, a not insignificant sum. The record also shows that the value of Woolworth's investments in its foreign subsidiaries repre-

sented approximately one-half of its total assets and nearly half of its stores were operated by foreign subsidiaries. The evidence is competent, clear and cogent on this question and it was error for the court to disregard it.

 The obvious effect of including the "gross-up" in the manner found proper by the lower court is to increase the Vermont net income by including this item of foreign subsidiary dividend income in the Vermont net income, while at the same time failing to reflect in the three factors any of the activities of the foreign subsidiaries which have no business activity in Vermont.

We now return to the second issue asserted by the appellant which is that if gross-up is included in income (which we have decided it is) the statute, 32 V.S.A. § 5811(18) violates the United States Constitution. However, we do not reach this issue for the reason that the effect of the discretionary adjustment would be to "wash out" the "gross-up."

Finding No. 14 is clearly unsupported by the evidence and cannot stand. The tax commissioner erroneously denied appellant's petition for an allocation and apportionment of its income so as to allocate to this state a fair and equitable portion of that income as provided by 32 V.S.A. § 5833. This compels a remand of the case to the Commissioner for his determination of this fact.

*Decree of the Washington County Court is reversed and cause remanded on the single issue of adjustment of the apportionment formula and by that Court to be further remanded to the Commissioner of Taxes for action under 32 V.S.A. § 5833(b) for a determination of that issue and a reassessment of plaintiff's income taxes for the years 1966–1969 inclusive.*