## In re Goodyear Tire & Rubber Company, Corporate Income Tax 1966, 1967, 1968

[335 A.2d 310]

No. 203-72

Present: **Barney, C.J., Smith, Keyser and Larrow, JJ., and Shangraw, C.J. (Ret.)**

Opinion Filed February 4, 1975

Motion for Reargument denied March 3, 1975

*Paterson, Gibson, Noble & Brownell,* Montpelier, and *Black & Plante,* White River Junction, for Goodyear Tire & Rubber Company.

*M. Jerome Diamond,* Attorney General, *James E. Hirsch,* Assistant Attorney General, and *Charles Edwin Goldkamp,* Deputy Commissioner of Taxes, for the Commissioner of Taxes.

**Smith, J.** This is an appeal from a decision of the Windsor County Court upholding the determination of the Commissioner of Taxes refusing to modify the apportionment formula provided in 32 V.S.A. § 5833 as requested by Goodyear Tire & Rubber Company. The apportionment formula in question was used to allocate a fair and equitable portion of Goodyear's income derived from business activity conducted both within and without Vermont to be subject to Vermont's corporate income tax for the calendar years 1966 through 1969. Goodyear points out that the Commissioner's refusal to modify the formula resulted in the taxation of foreign dividend income and "gross-up" in those calendar years. *See F. W. Woolworth Co.* v. *Commissioner of Taxes,* 133 Vt. 93, 328 A.2d 402 (1974) ; *F. W. Woolworth Co.* v. *Commissioner of Taxes,* 130 Vt. 544, 298 A.2d 839 (1972).

Goodyear's appellate attack on the Commissioner's refusal to modify the apportionment formula is twofold: the statutory apportionment of Goodyear's income pursuant to 32 V.S.A. § 5833 for the purpose of imposing Vermont's corporate income tax does not fairly represent the extent of the business activities of Goodyear in Vermont, and the taxation of Goodyear's foreign dividend income and "gross-up" violates the United States Constitution. Goodyear prefaces its arguments with a challenge to the failure of the county court to find that Goodyear's subsidiaries from which it receives its foreign dividend income were independently operated as separate entities.

Goodyear relies upon *Hans Rees' Sons* v. *North Carolina,* 283 U.S. 123 (1931), and its interpretations by various state courts to argue that where parent and subsidiary units are not "component parts of a single unit", dividend income from the foreign subsidiaries cannot be constitutionally included in the parent corporation's taxable net income. However, *Hans Rees' Sons* v. *North Carolina, supra,* does not embrace Goodyear's presupposition; its holding merely constitutionally prohibits the following allocation of the income of a non-resident corporation engaged in the business of manufacturing and selling leather goods by a state in which is located only the corporation's manufacturing plant: the allocation of that part of the corporation's income to the state which bore the same ratio to its entire net income as the value of the same corporation's tangible property within the state bore to the value of all its tangible property, where the average percentage of income having its source within the state was 17% and the average allocation percentage of income to the state subject to taxation was 80%.

Goodyear's constitutional argument rests on its allegations that its extraterritorial values are being taxed. This allegation, however, fails to distinguish the foreign dividend income that Goodyear receives from its subsidiaries from the profits those subsidiaries realize from their own business activities conducted without the borders of Vermont. The right to receive dividends is incident to the ownership of stock. *LaFountain & Woolson Co.* v. *Brown,* 91 Vt. 340, 342, 101 A. 36 (1917). Profits, on the other hand, are the net proceeds obtained by deducting from the gross proceeds all forms of expense or

outlay involved in, or incidental to, the business in question. *Stratton* v. *Cartmell*, 114 Vt. 191, 195, 42 A.2d 419 (1945).

The distinction between profits and dividends was made quite clear by the Pennsylvania Supreme Court in *City of Allegheny* v. *Pittsburg, A. & M. Pass. R. Co.*, 179 Pa. 414, 36 A. 161 (1897), where the question, answered in the negative, was whether a transaction by which a railway company was leased to a traction company, and the stockholders exchanged their holdings of stock in the former for stock in the latter, was equivalent to the declaration of a dividend by the railway company on which a tax would have been due under the railway company's charter and the ordinance of the city where the railway was located.

> The tax is not . . . on profits earned, but on dividends declared. A "dividend" as defined by Webster's Dictionary (1803), is "the share of a sum divided that falls to each individual; a distributive sum, share, or percentage, applied to the profits as apportioned among stockholders." It differs from profits in being taken by competent authority out of the joint property of the partnership or company, and transferred to the separate property of the individual partners or shareholders. *Id.*

The failure of the county court to make a finding on the issue of whether Goodyear's subsidiaries were operated as separate entities does not constitute error because of the lack of relevance such a finding has to the taxation of foreign dividend income. Vermont's corporate income tax does not seek to tax the profits realized from the business activities of Goodyear's subsidiaries conducted without the borders of Vermont. It is taxing only the dividend income realized by Goodyear itself. *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra*, 328 A.2d at 405; *Gulf Oil Corp.* v. *Morrison*, 120 Vt. 324, 328, 141 A.2d 671 (1958).

Moreover, for this Court to relieve Goodyear from the taxation of its dividend income would run afoul of 32 V.S.A. § 5811(18), which defines "Vermont net income" as the taxable income of the taxpayer for the taxable year under the laws of the United States", when 26 U.S.C.A. § 61(a)(7) specifically provides for the taxation of dividend income

under the laws of the United States. *See F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 130 Vt. at 550. Therefore, we find no error in the county court's affirmance of the Commissioner's refusal to modify the apportionment formula so as to exclude foreign dividend income from Goodyear's Vermont net income subject to Vermont's corporate income tax.

■ "Gross-up", in contrast to dividend income, is a creation of the federal income tax system. It is directly traceable to the business activities of Goodyear's subsidiaries. *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 328 A.2d at 406; *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 130 Vt. at 556. Therefore, to include "gross-up" in Goodyear's Vermont net income, without reflecting the business activities of Goodyear's subsidiaries conducted without the borders of Vermont in the apportionment formula, would "constitute an arbitrary and unfair representation of 'the extent of the business activities of [Goodyear] within this state . . . .' " *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 328 A.2d at 406; *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 130 Vt. at 557.

The Commissioner has been presented with the authority by the Legislature to modify the apportionment formula when a corporate taxpayer affirmatively demonstrates that the statutory apportionment of its income pursuant to 32 V.S.A. § 5833 "does not fairly represent the extent of the business activities of a corporation within the state . . . ." 32 V.S.A. § 5833(b). The failure of the Commissioner to modify the formula to reflect the business activities of Goodyear's subsidiaries while at the same time including "gross-up" in Goodyear's Vermont net income constitutes an abuse of his administrative discretion, and the failure of the county court to so conclude constitutes reversible error. *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 130 Vt. at 557.

Goodyear argues that upon remand of this cause to the Commissioner, he should be compelled to exclude "gross-up" altogether from its Vermont net income, citing Mr. Justice Larrow's dissenting opinion in *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 328 A.2d at 407–08. However, in the previous *Woolworth* opinion, *supra,* 130 Vt. at 554, Mr. Justice Keyser pointed out in a unanimous opinion:

There is no finding that by the election to use the gross-up rule the appellant did not realize an economic benefit. It clearly appears from the record, however, that the contrary is shown to be fact. Woolworth's Vermont and federal income tax returns disclose that it gained a decided tax advantage dollar-wise by exercising the option to use gross-up as a credit on its federal tax liability.

"Gross-up" is an accounting device by which a domestic corporation may credit against its federal income tax liability foreign taxes paid by its foreign subsidiaries out of their accumulated profits. *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 328 A.2d at 404. In construing Vermont's corporate income tax, the Legislature has directed that it conform with the United States Internal Revenue Code. 32 V.S.A. § 5820(a) ; *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 130 Vt. at 550. The "taxable income . . . under the laws of the United States" defining Vermont net income in 32 V.S.A. § 5811(18), shall be determined by reference to the judicial decisions and administrative rulings of the United States. 32 V.S.A. § 5888; *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 130 Vt. at 550–51.

The very essence of "taxable income" is the accrual of some gain, profit or benefit to the taxpayer. *Commissioner of Internal Revenue* v. *Wilcox,* 327 U.S. 404, 407 (1946). In electing to add to its gross income the amount of the foreign taxes paid by its subsidiary, Goodyear in fact realized a gain or benefit in an equal amount in the form of a foreign tax credit subtracted from its federal tax liability. This benefit is provided to domestic corporations through the federal income tax structure in the interest of encouraging overseas investment. Furthermore, 26 U.S.C.A. § 78 specifically includes "gross-up" in taxable income "[i]f a domestic corporation chooses to have the benefits" of this foreign tax credit.

In 1966, the Legislature chose to impose a tax on that benefit. Section 1, No. 61 of the Public Acts of 1966 (Sp. Sess.). In 1971, the Legislature chose to remove the tax imposed on that benefit. Section 12, No. 73 of the Public Acts of 1971. For the Commissioner, or for that matter, this Court to substitute its judgment for that of the Legislature as to the manner and

mode in which this State may collect revenue through taxation, where the presumptions of constitutionality that the legislation authorizing the taxation is entitled to has not been overcome by clear and convincing evidence, cannot be justified. *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 328 A.2d at 406. *See also San Antonio School District* v. *Rodriguez,* 411 U.S. 1 (1973) ; *Andrews* v. *Lathrop,* 132 Vt. 256, 315 A.2d 860 (1974).

■ Goodyear also contends that the Commissioner was vested with the authority under 32 V.S.A. § 5833 (b) to authorize separate accounting for its dividend and "gross-up" income from its foreign subsidiaries and to allow Goodyear to report its sales on a destination, rather than an origin basis. The Commissioner's authority, however, rests on the determination that the statutory apportionment formula "does not fairly represent the extent of the business activities of a corporation within this state . . . ." 32 V.S.A. § 5833 (b).

With the exception of the Commissioner's failure to modify the formula to reflect the business activities of Goodyear's subsidiaries when including "gross-up" in its Vermont net income, the record demonstrates that the statutory apportionment fomula does indeed "allocate to this state a fair and equitable portion of [Goodyear's] income . . . ." 32 V.S.A. § 5833 (a). Without a showing by Goodyear that the statutory formula did not fairly represent Goodyear's business activities in Vermont, it was clearly beyond the scope of the Commissioner's authority to modify the formula to include separate accounting or the "destination of sales" factor. *F. W. Woolworth Co.* v. *Commissioner of Taxes, supra,* 328 A.2d at 406; *Gulf Oil Corp.* v. *Morrison, supra,* 120 Vt. at 329. *Also, see generally In re Petition of Vermont Welfare Rights Organization,* 132 Vt. 622, 326 A.2d 828 (1974) ; *N.H.-Vt. Physician Service* v. *Commissioner, Dept. of Banking and Ins.,* 132 Vt. 592, 326 A.2d 163 (1974).

*Decree of the Windsor County Court is reversed and cause remanded on the single issue of modification of the apportionment formula in accordance with the views expressed in this opinion, and by that court to be further remanded to the Commissioner of Taxes for action under 32 V.S.A. § 5833(b)*

*for a determination of that issue and a reassessment of Goodyear Tire & Rubber Company's income taxes for the years 1966 through 1969 inclusive.*

Larrow, J. (dissenting). Again, as in the second Woolworth case, *F. W. Woolworth Co.* v. *Commissioner of Taxes*, 133 Vt. 93, 328 A.2d 402 (1974), I am compelled to dissent from the views of my brothers with respect to the inclusion of "gross-up" in the taxable income of the taxpayer. With the other points covered in the majority opinion I have no disagreement.

Albeit vainly, I must reiterate that an item never actually or constructively received is not income, even though it may "confer an economic benefit." Income must confer a benefit, but all benefits are not income. The interest received by a bank from its mortgages confers "an economic benefit" on bank depositors, in that it permits payment of interest on their deposits. So do dividends received by a bank on its owned securities. But no court, so far as I know, has ever held these items to be income to the depositor.

Nor am I persuaded otherwise by the statement of the majority that in 1966 the Legislature chose to impose a tax on that benefit, and in 1971 chose *not* to impose a tax on that benefit. Such a statement simply begs the question. More accurately put, in 1966 the Legislature enacted a statute which the Commissioner of Taxes *interpreted* to include "gross-up" as taxable income, and in 1971, when this was brought to their attention, passed an amendment expressly negativing that interpretation.

"Gross-up" is never received by the corporate taxpayer, either actually or constructively. It is tax paid *by* the foreign corporation, *for its own account, to* the foreign government. It cannot be equated with tax withheld and paid to the foreign government for the account of the U.S. taxpayer; this is income to the U.S. taxpayer because it *is* constructively received, just as are taxes withheld from wages in this country. Nor can it be equated with dividends from the foreign subsidiary, as these are actually received by the U.S. taxpayer.

The majority opinion purports to "conform" Vermont's corporate income tax to the U.S. Internal Revenue Code. But in the niceties of verbiage it overlooks the hard substance.

The Internal Revenue Code tells the corporate taxpayer that *if* it elects the tax advantage of taking credit for "gross-up" against its tax, it must add to its gross income computation an equivalent amount. In the *Woolworth* cases, and here, this Court tells the taxpayer that it must add this amount to its Vermont gross income computation even though it receives no equivalent credit whatever against its tax. What the majority opinion really does is add to the taxpayer's actual income its federal income tax credit, because this, and not the foreign tax paid by its subsidiary, is the "benefit" to it the opinion speaks of. Recognizing, as the Legislature appears to have done, that even a large corporation may be the recipient of an injustice, I dissent.