## Mobil Oil Corporation v. Commissioner of Taxes

[394 A.2d 1147]

No. 160-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 9, 1978

*Douglas C. Pierson* and *William H. Quinn* of *Pierson, Affolter & Wadhams,* Burlington, and *Jerome R. Hellerstein* and *J. Dwight Evans, Jr.* (Of Counsel), New York, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *Richard Johnston King,* Deputy Commissioner and General Counsel, Department of Taxes, Montpelier, for Defendant.

**Billings, J.** The Commissioner of Taxes (Commissioner) appeals from a final order of the Washington Superior Court redetermining plaintiff-appellee Mobil Oil Corporation's (Mobil's) income tax liability to the State of Vermont for the years 1970 through 1972 inclusive. The superior court determined that the Commissioner's application of the Vermont corporate income tax to certain of Mobil's dividend and

interest income offended the Commerce Clause of the United States Constitution. We reverse.

■ Vermont imposes an annual apportioned net income tax on corporations authorized to do business within the state or receiving income allocable to Vermont because of business activity within the state. 32 V.S.A. §§ 5811(15), 5831–5833. The application of this tax involves a number of steps. Once it has been ascertained that a corporation is a taxable corporation, 32 V.S.A. § 5811(15), the corporation's tax base is determined. The tax base is defined in 32 V.S.A. § 5811(18) as "the taxable income of the taxpayer for that taxable year under the laws of the United States, excluding income which under the laws of the United States is exempt from taxation by the states." The income items here disputed are not so exempt. The statute applies the misleading term "Vermont net income" to the income base against which the tax is assessed. The term might seem to indicate that the tax base is composed only of income allocable to business activities within the state, when in fact the term refers to a corporation's total net income before any allocation.

The allocation is a distinct step in the process of determining the corporation's tax liability to Vermont. 32 V.S.A. § 5833(a) establishes a procedure for apportioning the net income of a corporation engaging in activity both within and without the state to allocate to Vermont an equitable portion of that income upon which to lay its tax. The computation mandated by the statute seeks to determine the fraction of a corporation's net income derived from its Vermont business activity and utilizes a three factor formula. The value of all of the corporation's Vermont real and tangible property is expressed as a percentage of the value of the corporation's real and tangible property wherever located. The same process is repeated for Vermont payroll and sales. The arithmetic average of these percentages is then determined, yielding an apportionment factor. This apportionment factor multiplied by the corporation's total net income determines the apportioned tax base. It is upon this apportioned net income reflecting net income allocable to business activity within Vermont's borders that Vermont assesses the tax in question.

Mobil is a New York corporation engaged in interstate and foreign commerce. In each of the years in question, Mobil received a large portion of its taxable income in the form of dividends from foreign subsidiary corporations and from domestic subsidiary and nonsubsidiary corporations. Also, in each relevant year, Mobil received a small percentage of its income in the form of interest. These two sources of income will be referred to hereinafter as investment income. All other taxable income will be referred to hereinafter as operating income.

Mobil does not claim that it was not a taxable corporation during the years in question, nor does Mobil argue that the apportionment formula resulted in too great a percentage of its tax base being subject to taxation in this state. Rather, Mobil objects to its investment income being included in its Vermont tax base at all. Mobil filed tax returns during each of the years in question, determining its tax base by applying the apportionment factor, reckoned according to the statute, to operating income only. That is, in determining its "Vermont net income" for each year, Mobil took its net income for federal income tax purposes and reduced this figure by amounts representing dividend and interest income. This is not authorized by law, and upon audit the Vermont Department of Taxes added the amounts back in and assessed deficiencies.

Mobil appealed the deficiencies to the Commissioner under the provisions of 32 V.S.A. § 5833(b). A hearing was held at which time Mobil asserted that the assessments violated the terms of the tax statute, 32 V.S.A. § 5833, the Due Process Clause of the Fourteenth Amendment, and the Interstate and Foreign Commerce Clause of Article I, Section 8 of the United States Constitution. The Commissioner rejected all grounds of invalidity asserted and affirmed the action of the Department of Taxes.

Upon appeal, the superior court reversed on the sole ground that the tax as applied violated the prohibition against multiple taxation contained in the Commerce Clause. As the superior court correctly noted in its order, the legal questions concerning apportionment and due process had already been answered adversely to Mobil's contentions by recent decisions

of this Court. *In re Goodyear Tire and Rubber Co.,* 133 Vt. 132, 335 A.2d 310 (1975); *F. W. Woolworth Co.* v. *Commissioner of Taxes,* 133 Vt. 93, 328 A.2d 402 (1974); *F. W. Woolworth Co.* v. *Commissioner of Taxes,* 130 Vt. 544, 298 A.2d 839 (1972); *Gulf Oil Corp.* v. *Morrison,* 120 Vt. 324, 141 A.2d 671 (1958).

The single question presented here is: Does Vermont's application of its apportioned net income tax to the investment income in issue constitute multiple taxation prohibited by the Commerce Clause?

Mobil's argument that Vermont's tax would impose an unconstitutional burden on interstate commerce involves a number of propositions. The first is that taxes subjecting interstate businesses to a risk of multiple taxation not borne by intrastate business violate the Commerce Clause. The next is that the test of multiple taxation is the power of other jurisdictions to tax rather than the exercise of that power. The last is that the state of a corporation's commercial domicile, in Mobil's case New York, has the constitutional power to tax its corporation's dividend and interest income without apportionment. Mobil argues that if New York has the authority to tax all of Mobil's investment income, there is a risk that it will do so. If Vermont's tax upon a portion of the same income is sustained, there then will be a risk of multiple taxation. If the mere existence of the power is the constitutional test, then an impermissible burden would be shown by establishing New York's right to tax without apportionment. There is no allegation that New York presently taxes or intends to tax this investment income on an unapportioned basis, and so, no double taxation in fact is alleged. Mobil asks us to hold that the possibility that New York may so tax prevents Vermont and every other state from laying even a properly apportioned tax upon this investment income.

■ The burden is upon the taxpayer to demonstrate a risk of multiple taxation. *Standard Pressed Steel Co.* v. *Department of Revenue of Washington,* 419 U.S. 560, 563 (1975); *General Motors Corp.* v. *Washington,* 377 U.S. 436, 449 (1964).

■ Mobil in the case at bar has not established that its commercial domicile can tax the investment income of its

domiciliary corporation without apportionment. Mobil claims that this proposition is "well established," but only cites four cases in support of its claim. *Chestnut Securities Co.* v. *Oklahoma Tax Commission,* 125 F.2d 571 (10th Cir.), *cert. denied,* 316 U.S. 668 (1942); *Pacific Telephone & Telegraph Co.* v. *Franchise Tax Board,* 7 Cal. 3d 544, 498 P.2d 1030, 102 Cal. Rptr. 782 (1972); *Southern Pacific Co.* v. *McColgan,* 68 Cal. App. 2d 48, 156 P.2d 81 (1945); *United Gas Corp.* v. *Fontenot,* 241 La. 488, 129 So. 2d 748 (1961). Two of these four were decided more than thirty years ago, when apportionment was not looked upon as favorably as it is today. All of the cases construed statutes very different from the apportioned net income tax here in issue. Only the *United Gas* opinion mentioned the Commerce Clause. The Louisiana Supreme Court there held only that the commercial domicile could tax the income from its corporation's intangibles "unless it is established by the evidence [that] such taxation does, in fact, place an undue burden on interstate commerce." *United Gas Corp.* v. *Fontenot, supra,* 241 La. at 510, 129 So. 2d at 756. Whether or not an undue burden upon interstate commerce exists, is, of course, the precise point in issue in this case, and on this point the *United Gas* case is no authority. Congress or the United States Supreme Court may ultimately have to decide on the power of the states to tax on such a basis, but neither has done so yet.

We do not decide this issue in the case at bar since Mobil has failed to establish on the record that New York has the power to tax investment income without apportionment, and hence no risk of multiple taxation is here shown. A number of recent decisions of the United States Supreme Court imply that the issue would be decided by requiring that taxation of investment income of corporations engaged in interstate commerce be on an apportioned basis, rather than by permitting the commercial domicile to tax such income to the exclusion of all other jurisdictions. *Moorman Manufacturing Co.* v. *Bair,* 437 U.S. 267 (1978); *Department of Revenue of Washington* v. *Association of Washington Stevedoring Companies,* 435 U.S. 734 (1978); *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450 (1959).

The United States Supreme Court at one time took the view that the Commerce Clause creates an area of free trade around interstate commerce such that the states cannot tax such commerce at all. *Freeman* v. *Hewit*, 329 U.S. 249 (1946). But this doctrine had always been subject to exceptions. One line of cases drew a distinction between indirect taxation of interstate commerce through taxation of local incidents of that commerce and direct taxation of interstate commerce itself, only the latter being impermissible. Although it was recognized that the most effective way to safeguard the policies embodied in the Commerce Clause would be to prohibit all burdens on interstate commerce, it was also realized that all interstate commerce was carried on within the several states, imposing burdens on the states for which they should be compensated. *Western Live Stock* v. *Bureau of Revenue*, 303 U.S. 250, 254 (1938) states:

> It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the costs of doing the business. 'Even interstate business must pay its way,' . . . .

In recent times, the free trade view has been subject to dramatic erosion. As the revenue needs of the states were recognized to be both legitimate and large, more and more incidents of interstate commerce were accepted by the court as local and hence taxable without offending the Commerce Clause. In 1959, the Supreme Court directly held that net income from interstate operations of foreign corporations may be subjected to state taxation on an apportioned basis. *Northwestern States Portland Cement Co.* v. *Minnesota, supra.* More recently the Court has permitted a direct tax on the privilege of conducting interstate business. *Department of Revenue of Washington* v. *Association of Washington Stevedoring Companies, supra; Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274 (1977).

When the Commerce Clause was interpreted to permit taxation of only local incidents of interstate commerce, the danger of multiple taxation was handled within that doctrine. A state could only reach monies generated by activity which bore a

special relation to the taxing state. No other state could tax the same monies because the necessary special relation was lacking. As the states began laying broad taxes on gross receipts not tied to a geographical area or taxes on net income, the Court increasingly sanctioned the use of apportionment formulas to insure that extraterritorial values were not taxed and to guard against multiple taxation. If a jurisdiction is taxing according to the amount of business activity within its borders, that is, if the tax is fairly apportioned, there can be no multiple taxation. *Northwestern States Portland Cement Co. v. Minnesota, supra,* 358 U.S. at 462. Many states employ different formulas to arrive at their apportioned shares. Some overlap, and therefore multiple taxation may result. This threat is inherent in any system where state apportionment formulas are nonuniform. But in *Moorman Manufacturing Co. v. Bair, supra,* it was held that a state does not offend the Commerce Clause by having an apportionment formula different from that of its neighbors. See *State Taxation Under the Commerce Clause: An Historical Perspective,* 29 Vand. L. Rev. 335, 347 (1976) by Jerome R. Hellerstein.

In *Washington Stevedoring, supra,* the Court explicitly stated that it was engaging in a balancing analysis in determining Commerce Clause disputes, weighing the burden imposed on interstate commerce by a given tax measure against the state's "significant interest in exacting from interstate commerce its fair share of the cost of state government."

> All tax burdens do not impermissibly impede interstate commerce. The Commerce Clause balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity.

*Washington Stevedoring, supra,* 435 U.S. at 748.

An attempt on the part of New York to tax investment income without apportionment would tip the balance by subjecting to taxation more than New York's just share. *Washington Stevedoring* made it clear that apportionment was not simply a limiting device to prevent duplicative taxation. Apportionment should operate in such a way that each state the commerce touches will be allocated a proportion of an entity's tax base sufficient to yield a fair contribution toward the cost of run-

ning state government. What is a fair contribution will depend upon the benefits conferred upon the entity and the costs imposed by it upon the state by reason of its carrying on business within the state. See *General Motors Corp.* v. *Washington, supra,* 377 U.S. at 441. Vermont has the necessary nexus with Mobil and provides sufficient benefits to be able to lay an apportioned tax on Mobil's investment income along with its operating income. *F. W. Woolworth Co.* v. *Commissioner of Taxes,* 130 Vt. 544, 298 A.2d 839 (1972).

In a conflict between Vermont's apportioned tax on Mobil's investment income and an attempt on New York's part to tax that same income without apportionment, New York might very well have to yield. *Johns-Manville Products Corp.* v. *Commissioner of Revenue Administration,* 115 N.H. 428, 430–31, 343 A.2d 221, 223 (1975), *appeal dismissed for want of a substantial federal question,* 423 U.S. 1069 (1976). Mobil has not sustained its burden of showing that the Commerce Clause was violated by Vermont's properly apportioned income tax.

There are practical considerations that reinforce this conclusion. Mobil receives by far the majority of its taxable income in the form of investment income here sought to be insulated from taxation by all but one state. The record shows that in 1971 the federal taxable dividends of Mobil made up 92% of its federal taxable income, while in 1972 they equalled 125% of taxable income. The amount in excess of 100% in the latter year was offset by losses and deductions allowed in computing Mobil's federal income tax for that year.

If the investment income was not includable in the Vermont tax base, in 1971, Mobil would have to pay a tax on Vermont's apportioned share of 8% of its taxable income, while in 1972, Mobil would only owe a total of $25.00, the minimum tax. We have already decided that corporations engaged in business within the state receive protections and derive benefits according to the entire income of the corporation. *F. W. Woolworth Company* v. *Commissioner of Taxes, supra,* 130 Vt. at 549, 298 A.2d at 841. If Mobil's Commerce Clause argument prevailed, Mobil and similar corporations could effectively avoid taxation of the majority of their taxable income if the commercial domicile for any reason declined to tax to the full measure of its ability. The states would be frustrated in their

attempts to recoup the costs imposed upon them by foreign corporations merely because interstate commerce was being done. This, in our view, would be a perverse use of the Commerce Clause.

The recent decisions of the Supreme Court, which recognize the revenue needs of the states and seek to put Commerce Clause jurisprudence on a practical footing, require no such result. The Court has said repeatedly that where a state tax is fairly apportioned, not discriminatory, related to state services provided, and where the entity taxed has a substantial nexus to the taxing state, the Court will not void the tax on Commerce Clause grounds on an argument that is an abstraction or is based on mere speculation. That is, where the tax is of a type that is not inherently burdensome, the Court is requiring proof in the record of multiple taxation and not merely the argument that such hypothetically could occur. *Moorman Manufacturing Co.* v. *Bair, supra,* 437 U.S. at 276; *Complete Auto Transit, Inc.* v. *Brady, supra,* 430 U.S. at 278; *General Motors Corp.* v. *Washington, supra,* 377 U.S. at 449; *Northwestern States Portland Cement Co.* v. *Minnesota, supra,* 358 U.S. at 462–63.

*Decree of the Washington Superior Court is reversed; cause remanded, and by that court to be further remanded to the Commissioner of Taxes for action under 32 V.S.A. § 5833 and a reassessment of Mobil Oil Corporation's income taxes for the years 1970–1972, inclusive.*